## Ex Parte Charles Lehman.

1. CIRCUIT CLERK.  *Power of court to remove. Indictment. Conviction.*
A Circuit Court has no power to remove or suspend from office the clerk of such court, except upon conviction "on an indictment for misconduct or misdemeanor in office," as provided in sect. 417 of the Code of 1880; and before conviction for such offence the court has no power to remove or suspend the clerk for any cause whatever.

2. SAME. *Constitutional officer. How removed.*
The method provided by sect. 26 of Art. VI. of the Constitution, and sect. 417 of the Code of 1880, for the removal of constitutional officers is exclusive of all other methods.

SAME. *Indicted for forgery. Order of removal. Case in judgment.*
L., clerk of the Circuit Court of the county of W. was indicted for forgery. Thereupon the court made an order reciting that, "it having been represented to the court by the district attorney that the records of the office of the circuit clerk contain important and material evidence bearing upon the question of his (L.'s) guilt, and the court being of the opinion therefore that he is not a fit custodian of said records, and that the public interest and the necessity of their preservation require that they shall not remain in his keeping, it is therefore adjudged by the court that said L. is unable to discharge the duties of said office within the meaning of sect. 2279 of the Code of 1880, and that S. is hereby appointed clerk *pro tem.* of this court, who shall take the oath prescribed by law, perform all the duties and receive all the emoluments of said office, until said L. shall return to his duties." L. was not absent, and neither refused nor was unable to discharge the duties of his office. *Held,* that the order recited was an order of removal or suspen-

sion from office, and was not authorized by sect. 2279 of the Code of 1880, which provides for the appointment of a clerk *pro tem.* where the clerk "shall be absent, deceased, become unable, or refuse to discharge his duties."

4. Same.  *When incompetent to act.  Order in respect thereto.*
   When the order above quoted was entered L. offered to turn over to S. the books which it was alleged contained evidence of the charges against him, and to permit S. to act as clerk in reference to the indictments against him, but denied the power of the court to deprive him entirely of his office and the emoluments thereof, and asked that the order be modified according to this view of his rights.  The court refused to alter its order in any respect. *Held*, that the utmost power of the court was to take care that L. should not use his official position to obstruct his trial or to remove the evidences of his guilt, and with this view its order should have been modified as requested by L.

Appeal from the decision of the Hon. Warren Cowan, Judge of the Eleventh Judicial District, on *habeas corpus.*

On the 5th day of May, 1883, at a special term of the Circuit Court of Warren County, the court made and had spread upon the minutes an order in the following words: "It appearing to the court that Charles Lehman, clerk of this court, has been indicted by the grand jury of this county for the crime of forgery, and it having been represented to the court by the district attorney, that the records of the office of the circuit clerk contain important and material evidence bearing upon the question of his guilt, and the court being of the opinion, therefore, that he is not a fit custodian of said records, and that the public interest, and the necessity of their preservation, require that they shall not remain in his keeping, it is, therefore, adjudged by the court that the said Charles Lehman is unable to discharge the duties of said office, within the meaning of sect. 2279 of the Code of 1880, and that Charles Swett be and is hereby appointed clerk *pro tempore* of this court, who shall take the oath prescribed by law, and perform all the duties and receive all the emoluments of said office, until said Lehman shall return to his duties," etc.

Lehman refused to surrender his office entirely to Swett,

and the court entered an order citing him to appear and show cause, if he could, why he should not be punished for contempt of the court. Lehman answered this order, stating that he was willing that Swett " shall have charge of the indictments pending against respondent, and all books and papers relating to said charges, and that he shall act as clerk *pro tempore* as to said matters only, but he denies the right of this court to deprive respondent of his said office, or the emoluments thereof, before conviction of the offences charged, and without due course of law." And he moved the court to modify the order above set forth, so as to leave him in the partial control of his office, as claimed in his answer just quoted. But the court overruled his motion, adjudged his answer to the rule for contempt insufficient and ordered him committed to jail for contempt of the court in refusing to obey the order directing him to surrender his office to Swett.

Lehman was accordingly taken in charge by the sheriff and confined in the gaol of the county. But on the 9th of May, 1883, he obtained a writ of *habeas corpus* upon his petition, asking to be discharged from confinement. The judge, before whom the writ was returnable, after hearing the evidence offered, refused to grant the petition, and remanded the relator to gaol. Whereupon he appealed to this court.

*M. Marshall* and *Miller & Hirsh*, for the appellant.

Sect. 2279 of the revised Code of 1880 does not attempt to confer upon the court the power to remove, or even suspend, the relator from office. There being no vacancy, and the clerk being neither absent nor deceased, and not refusing to discharge his duties, the only language of said section, which was claimed to be the authority for the action of the court below is, if " such clerk * * * shall * * * become unable * * * to discharge his duties," etc. The question is as to the meaning of the word " unable." The clerk was present, willing to perform his duties, and was physically and mentally competent. Was he disqualified by law? Sect. 26 of Art. VI. of our State Constitution makes clerks,

etc., liable to presentment or indictment by a grand jury, and trial by a petit jury for wilful neglect of duty or misdemeanor in office, and upon conviction to removal from office, and sect. 417, Code 1880, provides for removal after conviction of misconduct or misdemeanor in office. The mode of removal thus pointed out by the Constitution is exclusive of all other modes. *The State* v. *Witty*, 11 La. An. 443; *Hyde* v. *The State*, 52 Miss. 675; *Page* v. *Hardin*, 8 B. Mon. 673; *Brown* v. *Grover, Admr.*, 6 Bush, 3; *Newsom* v. *Cockle*, 44 Bush 362, 363, showing that the removal can only be after conviction. The Circuit Court could not by an *ex parte* proceeding deprive the clerk of his office. *Lowry* v. *Tullis*, 32 Miss. 147. To give such an interpretation to this statute as to make it attempt to authorize the removal (temporary or otherwise) so as to deprive the clerk of his office before conviction, would be to make the act unconstitutional. *Hyde* v. *The State, supra; Newsom* v. *Cocke, supra; Lowe* v. *The Commonwealth*, 3 Metc. (Ky.) 241, 242; *Page, Auditor*, v. *Hardin*, 8 B. Mon. 673; *Brown* v. *Grove's Admr.*, 6 Bush, 3; *The State* v. *Witty*, 11 La. An. 443. The mere existence of the cause would not of itself operate to vacate the office. *Curry* v. *Stewart*, 8 Bush, 563. There must first be a conviction of something sufficient in law to deprive him of the office. *Honey* v. *Graham*, 39 Texas, 11. This case, holding that the office can only be taken away by due course of law, says: " Mere malfeasance or misfeasance in office, or even high crimes committed in office, do not of themselves vacate the office, but they do subject the incumbent to impeachment or to indictment, trial, conviction, and judgment of expulsion by due course of the law of the land." " Under such a judgment the removal does occur, and cannot until then occur." Ibid. 18. " Until judgment of expulsion the officer is still the incumbent." Ibid. 18. The court decided *ex parte*, and without a hearing, that the relator was " not a fit custodian of the records of his office, and that the public 'interest and the necessity of their

preservation require that they shall not remain in his keeping."
Contrary to the presumption of innocence, the judge convicts
in advance, and invokes the tyrant's plea of necessity to pre-
serve the public interests as a justification for a wilful viola-
tion of the Constitution and the law. The idea that the
removal or suspension can be justified by any solicitude for
the public interests is emphatically condemned in *Honey* v.
*Graham*, 39 Texas, 13, 17, 18. The argument from incon-
venience can have no weight. *O'Neal* v. *McClinton*, 5 Nev.
334. Not only is that not a proper construction of the statute,
but also if the statute expressly authorized such a proceeding
it would be unconstitutional. "For the Legislature to attempt
to empower a court to suspend whenever, in its judgment, the
public interests demanded it, would be unconstitutional."
*Lowe* v. *The Commonwealth*, 3 Metc. (Ky.) 242. This case
is approved in *O'Neal* v. *McClinton, ubi supra; Meredith* v.
*Harrison ex parte*, 33 Gratt 131; *The Commonwealth* v. *Gamble*
62 Pa. St. 343, and the same doctrine as announced in
*Page* v. *Hardin* is approved and the case cited in *Honey*
v. *Graham, ubi supra.* Where it cannot remove it cannot sus-
pend, for the latter is a temporary deprivation of the office.
*Lowe* v. *The Commonwealth*, 3 Metc. (Ky.) 241. The Legis-
lature cannot establish arbitrary exclusions from office.
*Barker* v. *The People*, 3 Cow. 703 (at bottom of
page). The truth is that sect. 2279, Code 1880, never was
intended to provide for the removal or suspension of a clerk
at all. It was merely intended to enable the court to provide
a person to act as clerk where there was actually none, that is
where there was no clerk who could and would perform the
duties. It is significant that this statute, sect. 2279, does not
use language employed in sect. 363, where the law makes use
of the expression "unfit to execute his office," in a particu-
lar case. As to the cases against the clerk he would, of
course, be unable to act as clerk in them, and accordingly he
did not object to Swett's acting therein. That, we contend
was the full extent of the power of the court. But we deny

the power of the court to interfere with his discharge of its duties or to deprive him of its emoluments other than those relating to the indictments against him. The court's only excuse for asserting that relator was unable to discharge the duties of the office was that the court would not permit it. Now, the court cannot create a vacancy and then fill it. To do that is arbitrary and unwarranted by law. *The State ex. rel. Kill* v. *Baird*, 47 Mo. 303, 304. And the false pretence that he was unable is exposed by the necessity for the very order of removal concluding with the words " until said Lehman shall return to his duties." Now, the said Lehman had never left them, was present performing them, having given bail, and returned to his duties on the Monday following when by the terms of the order, the functions of Swett ceased, and yet the court declined to rescind, or limit, its order, showing conclusively that the order was not true. Not having any power of removal, or suspension, in any case before conviction, the court had no jurisdiction and its order is void. We do not claim merely that the court erred in the exercise of its power — that it attempted to exercise a power which it had not. *Ex parte Wimberley*, 57 Miss. 45.

*M. Marshall* and *Joseph Hirsh*, of counsel for the appellant, argued the case orally.

*J. L. Harris, contra.*

Counsel invoke the principal *expressio unius est exclusio alterius*, and contend that Art. VI., sect. 26, of the Constitution would forbid the removal or temporary suspension of relator except for the things and in the manner there pointed out, even though it were expressly authorized by statute upon other grounds. Upon this point I will content myself with the citation of an authority which will commend itself to this court by its sound logic, no less than the high character of the court from which it emanates. Sect. 27, Art. VII., of the Constitution of Arkansas provides : " The circuit court shall have jurisdiction, upon information, presentment, or indictment to remove any county or township officer from office, for incompetency, corruption,

gross immorality, criminal conduct, malfeasance, misfeasance, or nonfeasance in office." The Supreme Court of that State, in *Allen* v. *The State*, 32 Ark. 241, construing this section to authorize removal only upon conviction, yet maintained the constitutionality of a statute authorizing suspension of an officer upon presentment or indictment, saying in response to the objection that the statute punished the offender before trial and conviction that "the same objection might be urged to all statutes which provide for arresting men accused of crime, and depriving them of liberty before trial and conviction. Persons charged with crimes are often denied bail, or unable to give it when allowed, and are imprisoned before trial and conviction. Public policy requires this to be done for the due enforcement of penal laws. Offices are not regarded in this country as grants or contracts, the obligations of which cannot be impaired, but rather as trusts or agencies for the public. They are within the power of the Legislature, except so far as the Constitution may forbid interference with them." Citing 7 Ind. 157. If this be true the question arises as to the authority conferred on the court by sect. 2279, of the Code. Counsel concede that the relator could not arraign or issue process against himself, and virtually admit that he is not the proper custodian of the record of his guilt, but contend that there should be a partition of the office, those records witnessing his guilt to be confided to another, and all others to be left in his keeping. This is manifestly impracticable. It would involve a judgment on the charge in the first instance. What records evidence or tend to prove his guilt? Perchance none indicate guilt. But the proposition for a "divy" is so absurd that we will not affront the court by further discussing it. It is marvellous that the relator, if innocent, should desire to retain custody of the records when it will give rise to the most unfavorable suspicions. An acquittal in such case would not be a complete vindication, such as every honest man desires. The relator sets up a "return to his duty." This would be good if the action of the court

was had because of his absence ; but in this case it is insuffi-
cient because he returns with the same disability resting upon
him.   Counsel contends that this proceeding was had without
notice to him, and is, therefore, void.   Where the object is to
deprive the clerk of his office, he is unquestionably entitled to
notice, but notice is not required in filling a vacancy caused
by death, absence or inability to discharge the duties of the
office.   If the clerk is absent, the object being to make a tem-
porary appointment, he is not entitled to notice.   If he is
sick notice is not necessary.   A filazer of the Court of Common
Pleas was absent from his office two years, and farmed it out
from year to year without leave of the court, for which he
was discharged, and no record of the discharge was entered
on the roll.   Upon his bringing in an assize, this was held a
good discharge.   Cruise's Dig., p. 133, sect. 91.   The relator
will be remanded, if, under any state of facts, the order could
have been made.   *Ex parte Wimberly*, 57 Miss. 437.

*J. L. Harris*, also made an oral argument.

CHALMERS, J., delivered the opinion of the court.

The order of the court, for disregarding which the relator
was imprisoned as for a contempt, was unmistakably an order
of removal or suspension from office.   It was so treated and
regarded by the judge who made it and by the officer who dis-
obeyed it, and such it plainly was.

If there exists under any circumstances power in
the circuit courts of this State to remove or suspend
from office the clerks of these courts before convic-
tion by a petit jury, their orders assuming to do so must
be obeyed until reversed, however wrongful they may be in
the particular case ; since it is only where a court has under-
taken to make an order which it is without jurisdiction to
make in any state of case that its commands may be disre-
garded with impunity.   *Ex parte Wimberly*, 57 Miss. 445.
The question presented, therefore, is this, Can a circuit court
in this State by its own order, without a trial and conviction

of any offence remove, or temporarily suspend from office, for any cause whatever, the circuit clerk of a county?

We have no hesitation in answering this question in the negative — circuit clerks with us are constitutional officers elected by the people for fixed terms of office. By sect. 26 of Art. VI. of the Constitution they are made amenable to indictment or prosecution by a grand jury, and trial by a petit jury for wilful neglect of duty or misdemeanor in office, and are to be removed from office when convicted; and this constitutional clause is put in operation and made more effective by sect. 417 of the Code of 1880, which makes it the duty of the court, upon conviction, to adjudge that the party be removed from office, and provides that the vacancy shall be filled as in other cases.

Plainly these constitutional and statute methods of removal are exclusive of all others. The Legislature has not attempted in any portion of our statute laws to provide for the suspension from office of any officer after indictment and pending trial for a criminal offence or a misdemeanor in office. Such a law, if enacted, and if it operated as a practical removal from office before conviction, would be of doubtful constitutionality, since it would give to an indictment that effect which the Constitution attaches to conviction only, and inflict punishment before trial. The validity of such a statute was upheld in *Allen* v. *The State*, 32 Ark. 241, but repudiated in *Lowe* v. *The Commonwealth*, 4 Metc. (Ky.) 241; *Bunn* v. *Grove*, 6 Bush, 3.

Certainly in the absence of legislation no such power can reside in the circuit court. It is true that the clerk is in many respects the arm of the court, the instrument by which it evidences its will and perpetuates a memorial of its proceedings, but he is an arm created and an instrument furnished by the common master of both, who has provided the appropriate and exclusive method by which each shall be dismissed from his service, and it is no more within the power of the judge to remove the clerk in violation of that method than it is within the power of the clerk to remove the judge.

The circumstances of the present case seem to have presented in their inception a plausible excuse for the action taken by the circuit judge, or, at least, to demonstrate that his action was prompted by the desire to protect the public interests. Four indictments, for falsifying the records of the court by issuing forged witness certificates in State cases for the corrupt and felonious purpose of defrauding the county had already been presented by the grand jury against the clerk, and while this proceeding by *habeas corpus* was pending in the court below nine more indictments for similar offences were brought in. The clerk was in the official possession of these indictments and of all the evidences by which the State proposed to establish his guilt; but he offered to turn these over to the custody of the appointee of the court, and to yield possession of the office itself so far as to permit its duties in relation to the indictments against himself to be discharged by another. The court declined to modify its order in the manner suggested and insisted upon his unconditional obedience to the order as entered; by which order he was peremptorily removed or suspended from every function and privilege of the office, deprived of all its emoluments, and another person was appointed in his stead.

This order is sought to be upheld by sect. 2279 of the Code, which authorizes, the appointing of a clerk or sheriff *pro tempore* when there is a vacancy in the office, or the incumbent is absent or unable to or refuses to discharge the duties of the position; but it is manifest that the section has no application to the facts here existing. The clerk here was not absent nor did he refuse nor was he unable to discharge the duties of the position, and however unfit he might be morally to occupy such a place this was a question for the voters of the county and not for the judge.

If convicted the law removes him; if acquitted, even upon the doctrine of reasonable doubt, he must remain in office until the expiration of his term. The utmost power of the court was to take care that he should not use his official position to obstruct

his own trial or to remove the evidences of his guilt, and with this view its order should have been modified in the manner suggested by the relator. It may be troublesome properly to execute such an order, but while no trouble is too great to insure justice and the infliction of proper punishment, it is better that the greatest criminal should go unpunished than that the Constitution should be violated by those whose first and highest duty is to guard and protect it.

If it need citation of authorities to show that no court can remove or suspend a constitutional officer save after conviction of an offence which authorizes it it is found in many cases and denied by none. *Hyde* v. *The State*, 52 Miss. 675 ; *Page* v. *Hardin*, 8 B. Mon. 673 ; *Newson* v. *Cock*, 44 Miss. 362 ; *Lowry* v. *Tullis*, 32 Miss. 147 ; *Honey* v. *Graham*, 89 Texas, 11 ; *Cury* v. *Stewart*, 8 Bush, 563.

Our conclusion is that, inasmuch as there is no state of facts which will make valid an order of removal before conviction, the relator was not guilty of contempt in disregarding the order made in this case. Wherefore, the judgment of the court below is reversed and the relator discharged.