# THE STATE ex rel. HENSON v. SHEPPARD, Judge.

### In Banc, December 22, 1905.

1. **PROHIBITION: Demurrer.** A demurrer to the petition and rule in prohibition admits every allegation of the petition well pleaded.

2. **OFFICER: Removal from Office: Constitution.** The Constitution in saying that "the General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town or township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty," did not limit the Legislature's power to provide for the removal or suspension of an officer to a "conviction of willful, corrupt or fraudulent violation or neglect of official duty." The words "in addition to other penalties" are significant. The entire section means that the Legislature must provide for removal of an officer on conviction, but may add other penalties.

3. ————: **Constitution: Power of Legislature Generally.** A legislature has power to enact any law not prohibited by the Constitution. This is a fundamental difference in the powers of Congress and of the General Assembly. The rule of construction of the State Constitution and of the Federal Constitution is radically different. Congress can enact no law unless the power is found among its powers enumerated in the Constitution of the United States. The Legislature can enact any law legislative in its character which it is not by the Constitution forbidden to pass.

4. **PUBLIC OFFICE: Natural and Property Right: Public Agency.** The right of a citizen to hold a public office is not a natural right, nor is it inherent in the citizen, nor is it in strict sense property, or a grant or vested right arising from contract; it is a public agency which, barring constitutional inhibition, may be abolished, curtailed or regulated by legislative enactment. Nevertheless, a duly elected public officer cannot be removed or deprived of its emoluments except in conformance with statutory authority.

5. ————: **Removal.** The statutes of this State limit the power of circuit courts to remove a public officer for some misconduct in office, official misfeasance, nonfeasance or neglect of official duty. They have no inherent power to remove or suspend him

192 sup—32

upon an *information* filed charging him with having committed a crime in no wise pertaining to his official duties.

6. ————: **Circuit Clerk: Charged With Murder.** The circuit court has no inherent or statutory power to remove from office a circuit clerk charged with murder, and deprive him of the emoluments of the office so long as the charge is pending, by the appointment of another person to perform all the duties of the office in the interim.

7. ————: ————: ————: **Clerk Pro Tempore.** But it would be unseemly to permit a circuit clerk charged with murder to have official custody of his own indictment, his own recognizance, the evidence before the coroner and before the committing magistrate, and to have power over all processes, entries and proceedings in his own case. Historically the duties devolving on the circuit clerk are those formerly performed by the judge, and the law rule is that no man may act as judge in his own case, and the policy of our statutes, in many instances, point in the same direction. Hence, the court should accept the voluntary offer of the clerk to appoint a clerk *pro tempore*, to perform all the duties, ordinarily incumbent upon the circuit clerk, in connection with the murder charge; and, where no such offer is made by the clerk, the court should, nevertheless, appoint a clerk for the particular case.

## Prohibition.

Writ made absolute.

*N. A. Mozley, J. M. Atkinson, D. B. Deem* and *Phillips & Phillips* for relator.

(1) The facts are admitted by the pleadings, hence, the court has only to pass upon a question of law. (2) We do not understand that respondent, or his counsel, claim that the proceeding to suspend relator from his office has any reference, even remotely, to the statute of the State in relation to the removal of circuit clerks from office, but if such claim is made, the most casual examination of the statute in connection with the motion filed by the prosecuting attorney to suspend, will demonstrate its utter fallacy. The motion to suspend relator avers that he is wholly incapacitated to

State ex rel. v. Sheppard.

act as clerk because the prosecuting attorey has filed two informations against him charging murder in the first degree, and it avers nothing else. The statute provides that where a circuit clerk has been guilty of a misdemeanor in office, charges to remove him from office shall be filed by the prosecuting attorney, and, pending the hearing on said charges, the court may suspend him. Hence, it is too plain for argument that, so far as statutory warrant is concerned, suspension cannot be had except as incidental to the proceeding to remove. In other words, suspension *per se* is not provided for by the statute. R. S. 1899, secs. 529 to 534; R. S. 1899, secs. 8853-8854. (3) Where, as in this State, express provision is made for the removal of a circuit clerk from his office, and the grounds of such removal are limited to misconduct in office, he can be removed for no other cause, and the misconduct must be of a kind affecting the performance of his official duties. State ex rel. v. Hickson, 41 Mo. 211; 7 Cyc. Law and Procedure, 204-5; 6 Am. and Eng. Ency. Law (2 Ed.), 136; Dowling v. Smith, 9 Md. 242; Colt v. State, 28 Ark. 417; Ex parte Lehman, 60 Miss. 967; 10 Cen. Dig., 83; Honey v. Graham, 39 Tex. 11. And where the mode of procedure is pointed out by statute for the removal from office of a clerk, it must be followed. 7 Cyc. Law and Procedure, 205. The Constitution provides: "All officers, subject to the right to resign, shall hold office during their official term, and until their successors shall be duly elected or appointed and qualified." This plain provision of the Constitution says relator shall hold his office during his official term and until his successor shall be duly elected or appointed and qualified. But seemingly determined to put the question beyond the possibility of cavil, the same Constitution provides: "The General Assembly shall provide for the removal from office of county . . . officers on conviction of willful, corrupt or fraudulent violation of official duty." Art. 14, sec. 7. Suppose the General Assembly should pass a law

providing that a circuit clerk should be suspended from office whenever the prosecuting attorney shall file an information against him charging murder, it could not be upheld, for the reason that such an act would be outside the constitutional grant to legislate upon that subject. (4) The General Assembly, however, in dealing with this subject, has kept itself commendably within the limits of constitutional warrant by providing that a circuit clerk may be removed from office upon conviction of misdemeanor in office, by providing also that charges must be filed, which the clerk may put in issue, and that a jury trial may be had. (5) As will be seen by certified copy of the motion attached to the petition for the writ in this case, relator offered in the court below to disqualify as clerk so far as the two cases against him were concerned and asked that a temporary clerk be appointed, which motion the court overruled. Relator is now willing that a temporary clerk for said two cases be appointed and that he may have the custody and care of all records, files and papers belonging to said cases and perform all of the duties of clerk respecting the same, but he denies that said judge has any power or right to suspend him from office generally merely because he is charged with murder in said court.

LAMM, J.—Suggestion for prohibition. Relator is the duly elected, qualified and acting clerk of the circuit court within and for Butler county. Respondent is the duly appointed, qualified and acting judge of said court. On the 22nd day of June, 1905, there were filed in said court by Joseph T. Davidson, prosecuting attorney of Butler county, two informations: in one, Henson stands charged with feloniously, willfully, deliberately and premeditately, with malice aforethought, assaulting one William Heck with a loaded shotgun on the 14th of April, 1905, and then and there feloniously killing said Heck by said assault and weapon; in the other, he is charged with murdering one Sylvester H. Adams

on the same day, in the same manner and with a similar lethal weapon.

Henson, being arrested and refused bail, was released on bond by proceedings in habeas corpus in this court, and by an entry of record in the Butler Circuit Court the cases were set down for hearing on August 14, 1905.

An abridgment of the proceedings below will not be uninstructive on the issues presented here. Attending thereto, it appears that on the 15th of July, Henson filed *in propria persona sedente curia* a suggestion to the effect that he was clerk of the circuit court of Butler county, with the ex-officio duty of issuing process, swearing witnesses and jurors, of making record entries and having the custody of court files and records; that he stood charged in informations, preferred and on file in said court, with the crime of murdering two men, Heck and Adams; was in custody of the law, but was innocent of said charges; that as clerk he had custody of the papers and the files in the cases wherein he was defendant and was burdened with the duty of issuing subpoenas, etc., and writing record entries ordered by the court therein. That he neither wished to incur the unseemly embarrassment or the responsibility incident to the personal performance of clerical duties in said causes, and, to that end, had agreed with the prosecuting attorney that some competent person be appointed by the court to perform the duties of circuit clerk, respecting said causes only, which agreement was to be spread of record to the end that the State as well as Henson be precluded from questioning the legality or validity thereof. That the prosecuting attorney receded from the agreement and, inasmuch as he had done so, he (Henson) now requested the court to designate some suitable person to qualify as a clerk pro tem, or as deputy circuit clerk and who might be charged with the safe-keeping of all files and papers, issue all process, write all record entries and do all things required by law nec-

essary to be done in and about said causes only; or in lieu thereof that the court designate some suitable person to act as clerk of said court respecting said causes only, and that the record show that such person so designated as clerk was designated upon the motion and at the request of defendant in said causes or that such other and additional orders be entered of record as will effectually bind defendant respecting the same.

Notwithstanding said suggestion so made by Henson, the presecuting attorney, acting we doubt not out of abundance of caution, concluded to follow lines laid down by himself. To that end, he filed in the said court his ex-officio complaint on the 21st day of July, 1905, whereby he set forth his own official title and duties, as well as Henson's, and averred that Henson shot and killed Adams and Heck on the 14th day of April, 1905, in said Butler county, and for said killing stood charged in two informations with murder in the first degree; that the trial is fixed for August 14, 1905, that Henson is under bond in the sum of $10,000 in each case and has custody of the records and files in said causes. That in order to get ready for trial, it is now necessary to have process issued for witnesses and make various and divers entries of record in said causes, wherefore it is declared and insisted upon that Henson is incapacitated to be the custodian of his own bonds and recognizances, to be the custodian of the evidence taken before the coroner's jury and the committing magistrate, to be custodian of the informations preferred against him, to issue process for witnesses against himself and to make record entries in either of said causes. And the complaint ends with a prayer that the court make an order suspending said Lida M. Henson ''from doing or performing *any* of the duties of the clerk of the circuit court of Butler county, Missouri, and to maintain and enforce such order of suspension so long as said charges of murder in the first degree against him . . . shall remain pending and undetermined'' in said court,

and "to appoint some competent person to perform *all*
the duties of clerk of said court so long as said suspension order remains in force.

Subsequently and on the 24th day of July, 1905, defendant through counsel demurred to the aforesaid
complaint, substantially on the grounds following:  (1)
for that the complaint does not purport to be based on
knowledge furnished by the court, in the shape or form
of notice, to said prosecuting attorney, stating the
charges against said defendant, nor is it based on the
oath or affirmation of any other person or persons; (2)
for that none of the charges relate to any misdemeanor
in the office of circuit clerk, and the defendant before
conviction is presumed to be innocent of the charges
actually preferred:  (3)  for that the circuit court is
without power to grant the relief prayed for in said
complaint;  (4)  and for that said complaint does not
state facts sufficient to state a cause of action.

So much for the status below.

On the 25th day of July relator served notice on
respondent of his intention to apply here for a writ of
prohibition and on the 1st day of August did present
his petition for such writ, which in substance sets forth
the aforesaid facts and avers, *inter alia,* that notwithstanding his said demurrrer filed below wherein the attention of respondent was directed to his lack of power,
and notwithstanding the fact that the said complaint
of the prosecuting attorney does not charge relator with
the commission of any misdemeanor or misdeed whatever in relation to his duties as clerk of said court or in
office, respondent assumed jurisdiction to hear said complaint and did hear the same, and, without authority or
jurisdiction, was proceeding to suspend relator from
his said office and appoint some other person in his
stead, and would have appointed some other person to
fill said office had not relator served him with notice
of his intention to apply here for a writ of prohibition.
That upon the service of said notice respondent an-

nounced to relator and all concerned that he would withhold final judgment until the 12th day of August, 1905, at which time he would in all things sustain the complaint of the prosecuting attorney and would suspend relator from office and appoint some other person in his stead unless this court interfered for relator's protection. That respondent is without power to try relator or do what he threatens to do because: (1) no charges are preferred against relator which allege the commission of a misdemeanor or misdeed in the performance of his duties as clerk of said court; (2) that respondent has no right or power to suspend relator except under such power as is conferred by statute (R. S. 1899, sec. 529), and that his attempt to exercise such power is unwarranted and an excessive exercise of jurisdiction; (3) that relator is presumed to be innocent of the crime charged against him in the informations and that the mere filing of said informations does not in anywise incapacitate him from the just and proper performance of his duties as clerk, etc., all of which he stands ready and willing and is entitled to perform.

Accompanying the suggestion for prohibition is a duly authenticated exemplification of the informations against relator, the entries of record, the complaint for his removal or suspension, his offer to have a clerk pro tem or deputy appointed to take charge of the papers and files pertaining to said criminal cases and perform the functions of clerk in and about said cases, his demurrer to the complaint below, etc.

On application here, a preliminary rule was granted and sent down by Division No. 2 to show cause, returnable to Court in Banc. To this rule respondent makes his return by way of demurrer, the grounds of which, in substance and effect, are, (1) because the petition does not state facts sufficient to constitute a cause of action; (2) because the facts stated in the petition do not entitle relator to the relief prayed; and (3) because the facts stated in the petition show that

the respondent has legal authority to suspend relator as clerk so long as the charges of murder are pending against him.

Upon this return being made, relator moved for judgment *non obstante,* and thereby the issue presented to us is whether under our Constitution and laws a circuit judge has power to remove or suspend a circuit clerk, duly elected, qualified and acting as such, and standing ready and able to perform his clerical duties, because he is charged with crimes, not misdemeanors in office, but othewise, and appoint a temporary clerk to perform all the duties of circuit clerk and enjoy the emoluments of the office *ad interim* while said criminal charges are pending. The controversy, in the shape the pleadings assume, resolves itself into a question of law, for the demurrer admits every allegation of the petition well pleaded.

The controlling contentions of relator are, in effect, as follows:

1. That the State Constitution prohibits the removal or the suspension of any officer except on *conviction* of willful,corrupt or fraudulent violation or neglect of official duty, and that if the statutes are construed to permit any other exercise of power, whether differing in degree or to be applied under other contingencies, such statutes are void.

2. That the statutory power given to the circuit court to suspend the clerk and appoint a clerk *pro tempore* is no warrant of authority for the power claimed by respondent under the conceded facts of this case.

3. To the above may be added a consideration of the offer or suggestion of relator that the circuit court select a suitable person to act as deputy or as clerk— a *locum tenens,* so to speak—solely in the criminal charges pending against him.

Of these *seriatim*:

I. The constitutional provisions invoked here are:

Art. 14, sec. 5.    "In the absence of any contrary provision all officers now or hereafter ·elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified."

Art. 14, sec. 7.  "The General Assembly shall, *in addition to other penalties,* provide  for the removal from office of county, city, town or township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty."

In construing section 7, supra, the phrase, "in addition to other penalties," is of live significance.  The constitutional mandate is to the effect that the Legislature *shall* provide for the removal from office of any officer convicted of willful, corrupt or fraudulent violation or neglect of official duty, not that the Legislature shall do nothing more.  The contention of relator is that the expression of one thing excludes everything else.  In other words, having said that an officer shall be removed on conviction, it follows, says relator, that he cannot be removed or suspended short of conviction, and this under the maxim *expressio unius.*  But this view entirely eliminates the important modifying phrase, "in addition to other penalties." "Penalties," as used above, means "punishment, fine,  forfeiture, deprivation of some office or right for some offense, misconduct, misdemeanor or delinquency." [State ex rel. v. Walbridge, 119 Mo. infra.] The entire section means that the Legislature must provide for the removal of an officer on conviction, but it leaves the question of other penalties solely within the realm of legislative enactment, and so it has been held.  [State ex rel. v. Walbridge, 119 Mo. l. c. 390, et seq.]

Moreover, the contention of relator does violence to a fundamental canon for construing our State Constitution, in that, contrary to the rule for construing the Federal Constitution and the powers delegated to the Congress, the Legislature of Missouri, speaking

generally, has power to pass any law not prohibited by the Constitution. [Ex parte Joseph Roberts, 166 Mo. l. c. 212.] Or, stated *aliter,* "the rule of construction of State constitutions is entirely different from that of the Constitution of the United States. In the latter you look to see if the particular power is among the *enumerated powers granted* to Congress; in the former you look to see if it is *legislative in its character,* and whether it is *prohibited* to the Legislature." [See Reverdy Johnson's argument in Dowling v. Smith, 9 Md. l. c. 261.]

No such offense can be imputed to the framers of our Constitution as that they denied the power to the people, acting through their Legislature, to provide for temporarily suspending an unfaithful officer caught, so to speak, red-handed in misconduct in his office.

Being of the foregoing opinion, it results that the Constitution is no bar to the legislation presently to pass in review, and, therefore, the first contention of the relator must be disallowed.

II. Attending next to the statutes anent the subject-matter in hand, the material parts follow:

Section 528. "If any clerk shall knowingly and willfully do any act contrary to the duties of his office, or shall knowingly and willfully *fail to perform any act or duty required of him by law,* he shall be deemed guilty of a *misdemeanor in office.*"

Section 529. "When any court, or the judge of judges, or a majority of them in vacation, shall believe from their own knowledge or from the information of others, on oath or affirmation, that the clerk of the court in which they preside *has been guilty of a misdemeanor in office,* they shall give notice thereof to the Attorney-General or prosecuting attorney, stating the charges against such clerk, and requiring him to prosecute the same; and they may suspend such clerk from office until a trial can be had, and appoint a temporary clerk, who shall possess the same qualifications, take the same

oath and give like bond as other clerks, and who shall possess the same power, perform the same duties and receive the like fees as other clerks, and shall continue in office until the regular clerk shall resume his office or a successor shall be elected.''

Section 530. ''Whenever the Attorney-General or prosecuting attorney shall be required to prosecute charges against any clerk, he shall make out each charge in due form, and cause a copy thereof to be served on him, together with a notice requiring him to appear before the court, on some day in term time, to be specified in such notice, and answer the said charges.''

Section 536. ''In addition to the mode herein provided, any clerk may, *for any misdemeanor in office,* be removed and otherwise punished by indictment in the circuit court.''

Section 8853. ''Any person elected or appointed to any office or employment of trust and profit, under the laws of this State, or any ordinance of any municipality in this State, except such officers as may be removed by impeachment, who *shall fail to personally devote his time to the performance of the duties of such office* or employment of trust or profit, and any county, city, town or township officer who shall be *guilty of any willful, corrupt or fraudulent violation or neglect of any official duty,* shall forfeit his office, and be removed therefrom as hereinafter provided.''

Section 8854. ''Upon complaint made to any prosecuting officer of any violation of the foregoing section or any part thereof by any such officer or employee within his jurisdiction, said prosecuting officer shall file a complaint, verified by the affidavit of such complainant, unless such officer files the same officially in the circuit court of the proper county, specifying the violation complained of, and citing the party to appear on the first day of the next term of said court and answer said complaint, a copy of which said complaint shall be served on the party complained of, at least fifteen days before

the first day of such term of court, by the sheriff thereof, and such court at such term shall proceed, with the aid of a jury if demanded, to try such cause, unless the same be continued for cause, as in civil cases."

Barring sundry immaterial details of procedure, the foregoing is the body of the law pertaining to the matter in hand.

Preliminary and leading up to a consideration of these statutes, it may be said that the right of a citizen to hold a public office to which he has been duly elected was early held by the highest courts of certain states of this Union to be both property and privilege. [Honey v. Graham, 39 Tex. 31; Hoke v. Henderson, 4 Dev. Law l. c. 17, et seq; Wammack v. Holloway, 2 Ala. 31.] This theory, however, seems to be a mere shadow of the English common-law doctrine (not permissible in a democracy) that an office is an incorporeal hereditament. The generally accepted American view is that eligibility to office is not a natural right inherent in a citizen, that an office is not a grant or a vested right arising from contract, that it is not property in the rigid sense that an ox or an ass or land is property. [Throop's Public Officers, sec 119.] And such has always been the view of this court from Primm v. City of Carondelet, 23 Mo. 22 (1856), down to State ex inf. v. Evans, 166 Mo. 347 (1901). A public elective office is a public agency which, barring any constitutional inhibition, express or implied, may be abolished, curtailed or regulated by legislative enactment.

Nevertheless, it does not follow because a public office created by law is not property in a precise sense, that a duly elected incumbent is at the whimsical sport of chance, caprice or of intermeddlers or of any form of illegal and unauthorized interference. A privilege or status so conducive of longevity and delight that, once incumbents of office, "few die and none resign" (see Jefferson's letter to Elias Shipman of New Haven, July 12, 1801, where the substance of this doctrine is

announced) may not be held by a thread so slender and precarious. [State ex rel. Millett v. Field, 37 Mo. App. l. c. 98.]    Speaking to the point in hand, Judge ANDREWS in Nichols v.MacLean, 101 N. Y. l. c. 533, aptly says: "But within these acknowledged limits, the right to an office carries with it the right to the emoluments of the office.   An office has a pecuniary value, although primarily it is an agency for public purposes."   So that, given that one but "reads his title clear to" a public office, he may not be rudely cast out from its *solatium,* its emoluments, except on due process and by the rigor of penalties denounced by positive law.   The undemocratic doctrine announced in the phrase  *sic volo, sic jubeo, stet pro ratione voluntas,* is not applied by the courts of a free people.  [Dubuc v. Voss, 19 La. Ann. 210.]

Respondent should, therefore, put his finger upon the statute which gives him jurisdiction to do what he admits he was about to do in this case.   This he has not done.   In the presence of the full and explicit provisions of written law above, there can be no excuse for falling back upon any reserve or inherent power, if such exist.   Power delegated to him must be found in his statutory warrant of attorney, or be a necessary incident thereof.   Both the letter and the *rationale* of the statute limit his right to suspend the clerk and oust him from all his duties to a case where the office has suffered; where the public have suffered, in that the incumbent has been an unfaithful servant in his office; has been guilty of a misdemeanor in office; or is charged with a misdemeanor in office; some official misconduct, misfeasance, non-feasance or neglect of official duty. The meaning at large of the phrase "misdemeanor in office" is not so definite and certain as to preclude judicial interpretation, but in Missouri the lawmakers have precluded the necessity of such construction by defining it themselves. [Sec. 528, supra.]

It stands admitted by the pleadings in this case that

Henson is able, capable and willing to perform and is performing, without slip, partiality or covin, all the duties of circuit clerk, and it is proposed to take that office from him, to appoint another person to it and its emoluments and honors, who shall hold the place as long as the charges of homicide lodged against him are pending, and these charges may drag their slow lengths through the courts during the balance of Henson's term; so that, attended by a presumption of innocence, he receives his official *conge* and quietus out of hand.

The frequent statutory reference to official misconduct and misdemeanors in office leaves no room to doubt of the mischief struck at, and by no allowable legal construction can a homicide, disconnected from the performance of official acts, come within the purview of, or mischief to be retarded by, the provisions under review.

State ex rel. v. Walker, 68 Mo. App. l. c. 119, considers the question in hand, and the doctrine there formulated is as follows: "It is very well settled in this country that the misconduct for which an officer may be removed must be found in his acts and conduct in the office from which his removal is sought and must constitute a legal cause of removal and affect the proper administration of his office. [Speed v. Common Council, 98 Mich. loc. cit. 364.] The cause must be one which specially relates to and affects the administration of the office and must be restricted to something of a substantial nature, directly affecting the rights and interests of the public. The cause must be one touching the performance of his duties showing that he is not a fit or proper person to hold the office. In the absence of a statutory specification, the sufficiency of the cause should be determined with reference to the character of the office and the qualifications necessary to fill it. [State ex rel. v. Common Council, 53 Minn. 238; State ex rel. v. Love, 39 N. J. Law 14; State ex rel. v. Mc-

Garry, 21 Wis. 502; People ex rel. v. Thompson, 94 N. Y. 451.]''

The statutes of Arkansas on the points under consideration are substantially our own. In Coit v. State, 28 Ark. 417, these statutes are construed. The case was one wherein the clerk was charged with forgery and the court, *nisi*, suspended him. In disposing of the matter, it was said:

''Before a clerk of the circuit court can be suspended under this statute, it must be shown affirmatively that he has been guilty of some misdemeanor in office; or that he is incapable of discharging the duties of his office according to law. . . . It was designed to protect the public from the wrongs which might be committed by a dishonest, or an incapable or a drunken official.

''This is a summary proceeding, and a court will not be warranted in suspending one of its officers only upon the most convincing and indubitable proofs that the best interest of the public will be subserved by such suspension, and such evidence should be placed on record in such substantial manner as would show that the action of the court was based upon tangible premises. . . . .

''A 'misdemeanor in office' is to use improperly or to abuse the functions of an office, to do some act by virtue of an office which is not lawful to do. It is not every misdemeanor or every crime which may be charged against a circuit clerk that will warrant a suspension of him from his duties.

''He may be charged with an assault, or even of robbery, or any other misdemeanor or crime alleged to be committed in a manner entirely unconnected with the duties of his office, yet he would not be liable to a suspension under the provisions of this statute. The act charged must be directly pertaining to or connected with his office, and tending to raise a violent presump-

tion that he was an unfit person to be intrusted with its duties.''

To make an end of the matter in hand, it is our opinion that respondent could not legally suspend Henson from all his official duties and emoluments because of the charges pending against him, and that his attempt to do so was in excess of his jurisdiction and created an emergency in which the writ of prohibition, on well-recognized principles, will go.

III. There remains to consider the temporary writ which did not prohibit respondent from appointing a temporary clerk for the immediate purposes of Henson's pending cases, but which merely prohibited him from carrying out his admitted purpose of removing Henson temporarily, but fully, from *all* his official duties during the pendency of said cases, the question being whether the temporary writ should be made absolute. Incidentally, in connection with the consideration of this question, the offer of Henson spread of record to permit respondent to select such clerk *pro tempore* —a clerk *pro hac vice* —must be held in mind.

If Henson had actually exercised clerical duties in his own cases and the validity of such acts was questioned here, a different question would naturally arise. If such question were up, we would have no difficulty, or hesitancy, in saying that his acts would be valid, because in a certain sense a clerk is a mere ministerial officer, and official acts of a merely ministerial character, performed by an interested party, are not, on that account alone, invalidated when assailed *ex post facto*. For instance, a clerk may issue process in his own behalf. [Huff v. Shepard, 58 Mo. l. c. 245.] And so it has been held by REDFIELD, J., in Vermont (Mut. F. Ins. Co. v. Cummings, 11 Vt. 503); and by the Supreme Court of North Carolina (Evans v. Etheridge, 96 N. C. 42); and this is the general doctrine of the books. [Throop's Public Officers, chap. 26.] A clerk in issuing process,

192 sup—33

whether *mesne* or final, is the mere instrument or hand of the court. [See Mut. Ins. Co. v. Cummings, supra.] So, too, a clerk in making record entries does not act independently of the judge, but makes such entries under his vigilant eye. [R. S. 1899, sec. 1594.] And, self-evidently, in a press or under the spur of emergency, a judge might write his court records and make his own entries. It has even been held that a clerk is not an essential element in a legally organized court (though that question is not necessary to the decision of this case and is not decided). For example, in Mealing v. Pace, 14 Ga. 596, the clerk of the court died and, during the *interregnum,* the court by an order entered in its own handwriting stood adjourned. If this adjournment was valid, there was no error; if invalid, there was error. In speaking to the point, LUMPKIN, J., said: "While we hold that he is a very proper officer to keep regular and fair minutes of all the proceedings of the court of which he is clerk, . . . still, we are quite clear, that the court can live and move and have its being without him. It can keep its own minutes, by entering them itself, and signing them, as is now done; and make its own adjournment from day to day, or for a longer time, to suit its own and the public convenience, without a clerk. Nor is there anything in our statutes which is repugnant to this conclusion. There are some things, *perhaps*" (the italics are in the original), "which the clerk alone can perform; but as to adjournments, he has neither part nor lot in the matter."

Indeed, in time past the custody of court records was intrusted to one of the judges, *custos rotolorum.* [See, Tit., Master of the Rolls, Black's L. Dict.] The word "clerk" (known to our forefathers as "clark") at root denoted a member of the clergy and the time was when the Law and the Gospel flowed from the same fountain, judges of courts were taken from the ranks of the clergy (1 Bl., p. 17), and the maxim *nullus clericus, nisi causidicus* was in full vigor of bloom and fruitage.

However, in progress of time, clerks and judges became sharply differentiated. A small or great "court hand" became in vogue as need called. The manifest impossibility of a judge's having charge of and writing the records and issuing writs became apparent, and the offices of clerks of court were created. In our State a clerk is not a constitutional officer in the sense a sheriff is, but his office is recognized in the Constitution and is provided for by express statute and may not be dispensed with. Howbeit, it does not follow that a clerk of a court, charged with the heavy crime of murder in the first degree and arraigned in his own court, should be compelled to act as clerk at the trial of his own case, and ultimately sign, peradventure, his own death warrant. Such condition is abhorrent to right feeling, the fitness of things and the decencies of life, and ought not to be demanded or tolerated by the law. Manifest scandals and misgivings would flow from such unseemliness and indecency. Not alone because it would be unnatural and unmerciful to compel a man to act as clerk where his own life or death was trembling in the scales of justice, but poor human nature may well be deemed inadequate to resistance of the temptations incident to such opportunity. Deep and keen is the significance of the Master's formula, "Lead us not into temptation," and not without force is the admonitory precept of that great jurist, who was taught his law at the feet of Gamaliel, "Abstain from all appearances of evil." The law should first cast the mote out of its own eye before it can see clearly the beam in another's.

In this case, relator has the custody of his own indictments, his own recognizance, the evidence before the coronor and before the committing magistrate, and hovers over all process, entries and proceedings. It is a debt due to justice, *ex debito justitiae,* that this should not be. If there were no precedent for a *locum tenens,* a clerk for that turn, we would make one. But there is a precedent (Ex parte Lehman, 60 Miss. 967), and that

precedent will be followed. In that case the clerk of the court was charged with forgery, and, as such clerk, he had charge of the record evidence of his forgery and offered to yield possession of his office so far as to permit its duties in relation to the indictments against himself to be discharged by another. The court below refused this offer and peremptorily suspended the clerk from every function and privilege of his office, depriving him of all its emoluments, and another person was appointed in his stead. Refusing to yield to this order, he was imprisoned as for contempt. Thereupon he sued out a writ of habeas corpus and it was held that he should be released, that the court below erred in not accepting the offer of the defendant.

The policy of our legislative enactments seems to point in the same direction. For instance, in Missouri a judge may not sit in his own case (sec. 1602, R. S. 1899), may not practice law (sec. 1612), neither he nor the clerk may have a partner practing law in the court of which they are severally judge and clerk (sec. 1614), a juror may not serve who is interested in a case or related to a litigant (sec. 3785), a probate judge or his clerk may not draw or witness any will or make any settlement for any administrator over which such court may have jurisdiction (sec. 1760), and neither of them may act as administrator or executor (sec. 6). So, too, a clerk of an administrator's sale must be disinterested (sec. 118), and an administrator may not act in the allowance of a claim in his own favor (sec. 205). Moreover, a sheriff may not act when he is a party (sec. 10049). But the clerk may appoint a suitable person to execute process (sec. 1599).

No man, says the wise Latin maxim, may act as a judge in his own case. And while in this case Henson is not the judge, yet his duties are those formerly performed by judges, and possibly to some extent may be so performed still, and while not strictly judicial, they are so closely allied to judicial duties as to come some-

what within the mischief denounced by that controlling maxim.

The temporary writ will be made absolute, and respondent, while not allowed to remove relator from his office and its emoluments pending his trial, will be allowed to appoint a suitable person who may qualify as, and perform all the duties of, clerk in that instance, have charge of all files in these criminal cases and make all entries and sign all writs and process as such clerk, *pro tempore.* The costs of this proceeding are hereby taxed against the relator herein.

All concur, except *Brace, P. J.,* absent.