## ST. ELMO SANDERS, Appellant, v. KANSAS CITY, a Municipal Corporation, Respondent.

### Kansas City Court of Appeals, January 5, 1914.

1. **MASTER AND SERVANT: Municipal Corporations: Services.** The plaintiff sued to recover for unpaid salary alleged to be due him from the defendant city for services rendered as city physician from October 15, 1908, to April 15, 1909, at $200 per month. Upon the adoption of a new city charter in September, 1908, the office held by the plaintiff was abolished and he was ousted. *Held*, that plaintiff's right to discharge the duties of his office and to receive his salary ended when the new charter went into effect and the new health board was created.

2. ————: ————: ————. An unconditional repeal of a municipal charter or the substitution of another with inconsistent provisions, without a saving clause respecting offices and officers as they existed under the former charter, will operate to abolish all offices thereunder. The term of a charter officer may be shortened by amendment to a charter. It is also established that an office may be abolished whether it be a charter, statutory or ordinance provision creating it.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*J. F. Clayton* for appellant.

*A. F. Evans* and *A. F. Smith* for respondent.

JOHNSON, J.—This is an action to recover unpaid salary plaintiff alleges is due him from the defendant city for services rendered as city physician from October 15, 1908, to April 15, 1909, at $200 per month. Another action was brought at the same time and in the same court by Carl A. Jackson against the city for salary earned by him as health officer during the same period. The two suits were tried together. A jury was waived and the court, after hearing the evidence, rendered judgment for the defendant in each case. The respective plaintiffs appealed and the two cases were argued and submitted together. In this opinion which is delivered in the Sanders case we shall determine all the issues in both cases.

Sanders and Jackson were appointed respectively to the offices of city physician and health officer on April 15, 1907, for terms expiring April 15, 1909. Each discharged the duties of his office until October 15, 1908, when he was ousted and his salary discontinued on the ground that his office had been abolished by the provisions of a new charter adopted by the people of Kansas City at an election held September 3, 1908. Plaintiffs contend that the new charter expressly continued them in office until the expiration of the term for which they were appointed.

The appointment of Sanders was pursuant to section 14, art. IV of the Charter of Kansas City of 1889 which provided that "there shall be . . . a city physician who shall be appointed by the mayor, by and with the advice and consent of the upper house of the common council and shall hold . . . office for two years unless sooner removed, and who shall perform such duties as may be prescribed by this charter or any ordinance of the city."

This charter contained no mention of the office of health officer but did empower the common council to create a board of health. Subsequently the office was established by ordinance which fixed the term of office

at two years and made the health officer a member of the board of health, the other members of which were the mayor and chief of the fire department, chief of police and superintendent of streets. The appointment of Jackson was made while this charter and the ordinances enacted to give it effect were in force.

The new charter, adopted in September, 1908, covered the entire field of the old and made many important changes in the municipal machinery. It omitted the office of city physician and conferred no authority on the council to create a board of health. Instead it created a new department to be known as the "Hospital and Health Department" and invested that body with wide powers and functions, including those exercised by the city physician and board of health under the old charter and ordinances. The department was placed under the management and control of "a Hospital and Health Board" composed of three members who were required to serve without compensation. Practicing physicians or surgeons were not eligible to membership. [See Art. XIV, Charter and Ordinances of Kansas City, 1909.]

The board was required to organize in ten days after its appointment and among its powers was that of appointing officers to perform the duties pertaining to the old offices of city physician and health officers. Sec. 32, art. XVIII, of the new charter reads in part, as follows: "All provisions contained in this charter which are the same as provisions . . . in the charter of the city . . . which this charter supersedes, shall be taken, held and construed as containing such provisions of said superseded charter . . . in uninterrupted force and effect."

Another section provided: "All ordinances, regulations and resolutions in force at the time this charter takes effect, and not inconsistent with the provisions thereof, shall remain and be in force until altered, mod-

ified or repealed by the common council." [Sec. 1, art. XVIII.] Another section contains the saving clause on which plaintiffs base their right to hold office until the expiration of the term of their respective appointments. That clause is that "all persons in office in the city at the time of the taking effect of this charter shall hold their offices until their successors are elected or appointed and qualified."

A section invoked by Dr. Jackson is that "the incumbents of all positions at the time this charter takes effect, coming within the competitive class of the classified service, may continue in service and discharge the duties assigned them until the beginning of the fiscal year 1910, and until the board secures an eligible list and promulgates rules as provided in section 3 of this article, whereupon said incumbents shall be deemed to have vacated their several positions. Until such time appointments and removals shall be made and vacancies filled as elsewhere provided in this charter." [Sec. 18, art. XV.]

Further the new charter provided (Sec. 27, art. IV) that "each board shall, with the concurrence of the common council, fix a general schedule of the number, grade and compensation of all agents and employees in the department under its supervision and control." Pursuant to this provision the hospital and health board which was appointed shortly after the adoption of the new charter fixed a general schedule of the number, grade and compensation of its agents and employees and this schedule was approved in an ordinance passed by the common council, September 11, 1908.

The schedule provided for a superintendent of the hospital at $200 per month, a health commissioner at $200 per month, two physicians at $100 per month each, two at seventy-five dollars per month each and four at fifty dollars per month each. The duties of the offices held by plaintiffs were distributed among these

appointees and, as stated, the offices of city physician
and health officer were discontinued. It is not claimed
and there is no suggestion in the record that plaintiffs
were legislated out of office by a fraudulent or merely
nominal abolition of their offices.

Before the expiration of the terms for which they
were appointed under the old charter and its auxiliary
ordinances, the people of the city, at a regular election,
voted to adopt a new charter which, in fact, as well as
in expressed purpose, superseded the old charter and
ordinances and provided for many radical and funda-
mental changes in the general plan as well as in the
details of the municipal government. A new depart-
ment was created to which was given general and ex-
clusive control over the subjects of the health and
sanitation of the city. There can be no question of
the purpose and intent of the new charter to abolish
the offices held by plaintiffs and to assign the powers
and duties of those offices to the hospital and health
department. The references we have made to the two
charters conclusively demonstrate that the people in
adopting the new charter intended to substitute a new
and different plan or method of dealing with the sub-
jest of the health and sanitation of the city, a plan
which discontinued all of the old offices and transferred
their powers and duties to a single board of three mem-
bers.

In this State our courts always have recognized
and applied the doctrine supported by the great weight
of authority in America that no one can acquire a
vested right in an office established by the legislative
department of a State or municipality. All offices
are created for the public good and the rights of their
incumbents are subordinate and inferior to that prime
object. The power to create, unless restrained by
law, includes the power to abolish and an officer
elected or appointed even for a definite term, takes
office with the implied understanding that the power

which created the office may abolish it before the expiration of his term, in which event he will find himself out of office. As is well said in City of Hoboken v. Gear, 27 N. J. L. 265, quoted with approval by our Supreme Court in Gregory v. Kansas City, 244 Mo. 549:

"The appointment of a public officer for a definite term with a fixed salary bears no analogy to a private contract between individuals for service. The private contract is purely voluntary. Both parties are bound by its stipulations. The employer can neither alter the time or mode of payment, nor vary the service to be rendered, nor abridge the time of service. Each is liable to the other for breach of contract on failure to perform. But an appointment to a public office during a term of years, and the acceptance of such office, is not a contract between the government and an individual that the officer will serve or that the government will pay during that period. The acceptance may not be a matter of choice but of compulsion; and where the acceptance is voluntary, the officer is not bound to serve during the term. He may remove from the State or resign, or otherwise determine his official relation without a violation of contract. . . . And on the other hand the government may abolish the office and thereby terminate the service without a violation of contract."

We give our approval to the following quotation from McQuillin on Municipal Corporations (Vol. II, sec. 494):

"An unconditional repeal of a municipal charter, or the substitution of another with inconsistent provisions, without a saving clause respecting offices and officers as they existed under the former charter, will operate to abolish all offices thereunder. The term of a charter officer may be shortened by amendment to the charter. It is also established that an office may be abolished by an authorized repeal of the law.

whether it be a charter, statutory or ordinance provision creating it.

The office may be abolished by creating another office and conferring the same powers and duties thereon. Thus the legislature may abolish the office of mayor and create another officer to perform the same duties. The abolition of a department abolishes the offices of that department. A municipality may, at its pleasure, abolish an office created by it for which the charter did not provide.''

Further reference to the authorities would serve no useful purpose. The abolition of their respective offices by the new charter turned plaintiffs out of office unless the new charter expressly provided for their retention in the service of the city until the expiration of their respective terms. We do not find anything in the language of section 9, article XVIII, to justify the interpretation that it provided for the retention of officers whose offices were abolished. Obviously that section was intended to apply only to officers, and there were many of them, whose offices were to be continued. To hold otherwise would result in bringing that section into irreconcilable conflict with other provisions of the charter we have noted, while the construction we are giving it harmonizes the whole and therefore satisfies the prime rule of statutory construction which requires the adoption of the interpretation that will give effect, if possible, to all parts and provisions of a legislative enactment.

The new charter provided for the immediate creation of the Hospital and Health Board and certainly did not contemplate that the new board would do nothing until the expiration of plaintiffs' terms of office, or that two sets of officers should be invested with the right to perform the same duties. Plaintiffs' right to discharge the duties of their respective offices ended with the creation of the new board and the termination of their right to continue in the performance of

the duties of the abolished and superseded offices terminated also their right to continue to receive the salaries of those offices.

The point made by Dr. Jackson that his office fell within the purview of section 18, article XV, of the new charter is found to be untenable in view of the provisions of section 4, of the same article which expressly exempts the successor of Dr. Jackson, i. e., the Hospital and Health Board from the operation of section 18.

The judgment is affirmed. All concur.