In the Matter of J. M. MOTLEY, Agent for the New York Casualty Company, and THE NEW YORK CASUALTY COMPANY, v. CALLAWAY COUNTY, a Municipal Corporation, Appellant.—149 S. W. (2d) 875.

Division One, April 18, 1941.

*Henry C. M. Lamkin* and *T. A. Faucett* for appellant.

*Glover Dowell* and *Baker & Baker* for respondents.

HYDE, C.—This is a proceeding to collect a $600 premium for the year 1940 on the County Collector's bond. The County Court rejected payment; and upon appeal to and trial in the Circuit Court, judgment was entered against the county which has appealed. It is contended on behalf of the county that Section 1 of the Act, approved April 6, 1937 (Laws 1937, p. 190) concerning payment of premiums, is unconstitutional and void, because in conflict with Section 3 of Article 10 of the Constitution.

This section (now Sec. 3238, R. S. 1939), so far as applicable to county officers, is as follows:

"Whenever . . . any officer of any county of this state, or any deputy, appointee, agent or employee of any such officer . . . shall be required by law of this state, or by charter, ordinance or resolution, or by any order of any court in this state, to enter into any official bond, or other bond, he may elect, with the consent and approval of the governing body of such . . . county . . . to

enter into a surety bond, or bonds, with a surety company or surety companies, authorized to do business in the State of Missouri and the cost of every such surety bond shall be paid by the public body protected thereby.''

The County Court, on January 2, 1939, entered the following order:

"It is therefore considered, adjudged and decreed by the Court that said Stanley Creed, Collector as aforesaid, be and he is hereby authorized to purchase his official bond as said Collector of Revenue in the amount of $75,000.00 from a Surety Company or Corporation, authorized and chartered to sell bonds in the State of Missouri and the cost to be paid by Callaway County, Missouri, as provided by Section 1, page 190 of the Missouri Session Acts of 1937, provided said bonds shall be subject to the approval of the County Court.''

The bond furnished by plaintiff Company was approved by order entered February 28, 1939. It recited that it covered a term of office of "four years next ensuing the first day of March, 1939." A warrant was then issued by order of the court, for $600, in payment of the first year's premium for the year 1939. The collector included the item of $600 for the 1940 premium in his 1940 Budget Estimate but the County Court refused to pay the bill therefor presented in March 1940.

Defendant's constitutional contention is that the 1937 Act "is unconstitutional for the reason that it is taking public funds for private purposes and is in conflict with Section 3, Article 10, of the Constitution of the State of Missouri." [See also Sections 46-47, Art. 4.] Defendant says "the law has always required county collectors in the state to give bond; and if a commercial bond be given, to pay for it themselves;" that it is "a private undertaking to protect public funds;" and that "the county collector is a private enterprise in collecting taxes, for which he is paid a salary." It is true that under the monarchical form of government, in the early development of the common law in England, "public offices were regarded as incorporeal hereditaments and subjects of private property." [46 C. J. 932, sec. 28; see, also, 22 R. C. L. 376, sec. 7.] But under our form of government an office "is a privilege in the gift of the state and depends upon the favor of the people;" and it "is a public trust" because "it is created in the interest and for the benefit of the public." [22 R. C. L. 376-378, secs. 8-10] It is not (or the compensation thereof) a subject of grant or contract of any person or officer. [State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S. W. (2d) 532.] The fee system of compensation (payment of fees for each service rendered by an officer) goes back in its origin to the early common law view of an office as private property. It has been increasingly recognized in this country that this is not a good system for a democracy under a representative form of government. The modern tendency has, therefore, been to put our Federal and State officers on a salary basis,

■ Public funds have long been used to furnish public officers with office space, stationery, postage stamps, and office supplies. The matter of furnishing bonds is surely analagous. A bond is "in effect merely collateral security for the faithful performance" by an officer, a duty he owes the public in any event, in order to protect the public from loss. [22 R. C. L. 497, sec. 176.] Personal bonds have many known disadvantages and deficiencies, which it is unnecessary to discuss here. The Legislature, no doubt taking notice of the results of some of these during recent depression periods, considered that surety company bonds could give better protection to public funds in the custody of public officers. It, therefore, authorized such a bond for county officers if the officer elected to furnish it and the county court approved it. It also recognized that to require an officer to pay the premiums therefor would have the effect of reducing his actual net compensation. So when consent and approval for the officer to purchase such a bond at public expense was given in advance by "the public body protected," it was required to pay the cost. No one has ever contended that payment of salaries to officers, instead of requiring them to collect fees from those to whom they render service, is not a public purpose. We see no difference in principle between the use of public funds in payment of officers' salaries and authorizing their use to pay bond premiums, instead of requiring the officer to pay these himself; or to beseech other private citizens to personally guarantee his faithful performance. It will not always be in the public interest to create a situation in which a public officer may be placed under greater obligations to certain private citizens (who furnish his bond) than to the public generally. At least, we think it is within the discretion and authority of the Legislature to say which is the best public policy. In State ex rel. Crow v. St. Louis, 174 Mo. 125, 73 S. W. 623, 61 A. L. R. 593, it was held that an ordinance was for a public purpose which "only appropriates the expense that a public officer incurred and paid, while in the discharge of his duty as such officer, in removing a nuisance from the public highway, which the law expressly required him to do, and which the city was under obligation to its citizens to do." The court pointed out therein after instances of expense incurred by an officer in the performance of his duty which might properly be paid out of public funds. ■ Here the county was obligated by the laws of this State to see that public funds were protected by a proper bond, and the collector was required by law to furnish a sufficient bond. The 1937 Act only authorized the county to make an agreement for this type of bond, and, if it did so in advance, to pay for it when it was furnished. [For recent decisions upon the question of what is a public purpose see State ex rel. Gilpin v. Smith, 339 Mo. 194, 96 S. W. (2d) 40; State ex rel. City of Excelsior Springs v. Smith, 336 Mo. 1104, 82 S. W. (2d) 37; State

ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367; Jennings v. City of St. Louis, 332 Mo. 173, 58 S. W. (2d) 979; State ex rel. Kansas City Ins. Agents Assn. v. Kansas City, 319 Mo. 386, 4 S. W. (2d) 427.] We hold that the statute is not unconstitutional upon this ground.

 Defendant's answer did not plead or rely upon any other section of the Constitution. Defendant does further contend that the statute is unconstitutional "because said law does not provide that each subdivision of the county and state should pay its proportionate part of the premium in question . . . when as a matter of fact the bond protects the state, county revenue, county road fund, county hospital, courthouse and jail bond and interest fund, special road and bridge fund, Fulton Special Road District. (and other special road districts), and 105 different school districts in said County of Callaway." Defendant cites no constitutional provision which prohibits this, but says "that it is unfair, inequitable and unjust to take the premium of the respondents' bond out of the general revenue fund of the county." As noted by plaintiff, "the argument used against the payment of this premium could be used against the payment of the county clerk's fees for making the tax books, against paying the treasurer's salary as custodian of the funds, and against the payment of the compensation of the members of the county court for looking after the county's business." We see no constitutional obstacle to the payment of the cost of a county officer's bond from the general revenue fund of the county, and, therefore, hold that this is within the authority of the Legislature.

 Defendant also makes the assignment that plaintiffs "are not the real parties in interest because no privity of contract existed between the respondents and appellant on which to base a cause of action." Under the statute, the county was the party obligated to pay the cost of a surety company bond, under the circumstances of this case. No requirement is made that the county officer (when the county consents in advance to obtaining a surety company bond) must first pay the premium before the county is obligated to pay it. Likewise, the premium was ultimately due to plaintiffs and the county did pay the first premium directly to plaintiffs. Section 849, R. S. 1939 (sec. 698 Mo. Stat. Ann. 900) provides that "every action shall be prosecuted in the name of the real party in interest." Defendant cites only old cases no longer followed; the latest being Manny v. Frasier's Administrators, 27 Mo. 419, overruled by Salmon Falls Bank v. Leyser, 116 Mo. 51, l. c. 77, 22 S. W. 504, l. c. 519. It has long been settled that a person for whose benefit an express promise is made in a contract between others may, under this statute, sue in his own name. [Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; Crone v. Stinde, 156 Mo. 262, 55 S. W. 863; Binswanger v. Employers'

Liability Assur. Corp., Ltd., 224 Mo. App. 1025, 28 S. W. (2d) 448.] We find no merit in this assignment and it is overruled.

Defendant makes the further contention that the court erroneously found against its claim that the County Court order of January 2, 1939, authorizing purchase of the bond, was procured by fraud. Defendant's answer alleged that the members of the county court were misled by the attorney employed by the county officers, upon whose superior knowledge they stated they relied without knowing he was representing adverse interests; and it was asked that the order be declared void and not binding on the county, and be canceled by decree. This contention was based on what happened at a meeting of the new members of the county court with the other officers at their attorney's office soon after the November 1938 election, before their terms of office had commenced, and more than a month before the order was made. The Chancellor heard the testimony of the county officers and their attorney and of the members of the county court as to what occurred at this meeting and found against defendant's claim. It appears the members of the court were told, when asked to attend the meeting of the other officers, that "they wanted Mr. Baker to make a talk to us about the bonds;" that the 1937 Act was read to them several times; and that the members of the court expressed a preference for surety company bonds. It seems apparent that the substance of the discussion was that the officers would furnish surety bonds only if the county paid the costs and that this should be done if the court wanted such bonds. A careful reading of the testimony convinces us that there was not only substantial evidence to support a finding of the attorney's good faith (there was testimony that Mr. Baker said it was not mandatory on the court to buy bonds), but that there could be little more than surmise and suspicion upon which to base a claim of fraud. We, therefore, accept the finding of the Chancellor. No questions, as to the right of the County Court to require a new or different bond (see provisions of Chapter 16, R. S. 1939), or as to procedure under the county budget law (see Chapter 73, R. S. 1939) are presented by the pleadings at the trial or assignments on appeal.

The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur.