**STATE ex rel. Harry A. HALL, Relator,**

v.

**John C. VAUGHN, Comptroller and Director of Budget, Respondent.**

**No. 57842.**

Supreme Court of Missouri,
En Banc.

July 19, 1972.

Rehearing Denied Aug. 3, 1972.

Shook, Hardy, Ottman, Mitchell & Bacon, by David R. Hardy, Charles L. Bacon, William G. Zimmerman, Kansas City, for plaintiff.

John C. Danforth, Atty. Gen., John C. Klaffenbach, C. B. Burns, Jr., Asst. Attys. Gen., Jefferson City, for respondent.

MORGAN, Judge.

In this original proceeding, relator asserts that he is the Judge of Division Ten of the Sixteenth Judicial Circuit of Missouri; that respondent is Comptroller and Director of Budget for the State of Missouri with the duty of approving and issuing payroll drafts to pay the salary of judges of this state; that since the date of January 1, 1972, respondent has failed and refused to pay the compensation provided

by law for a judge of said division on the premise that relator on said date ceased to be a judge of the Sixteenth Judicial Circuit by virtue of the provisions of Section 30, Article 5, of the 1945 Constitution of Missouri, V.A.M.S., as adopted at a special election on August 4, 1970, with an effective date of January 1, 1972; and, as a consequence thereof, relator seeks a peremptory writ of mandamus compelling the payment of such compensation.

To sustain his position, relator submits: (1) that Section 30 of Article 5 is an entirely new constitutional provision which applies prospectively and therefore does not modify or curtail relator's present term of office, and, (2) that said section constitutes an arbitrary, unreasonable and unconstitutional classification among circuit judges of this state in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

Factually, the parties agree that in 1956 relator was appointed a judge of said circuit pursuant to the provisions of the constitution of this state (generally referred to as the non-partisan court plan); that he was retained in office in the general elections of 1958 and 1964 and served for successive terms of six (6) years each; that on May 15, 1970, in accordance with the provisions of Section 29(c) (1) of Article 5, relator filed the constitutional declaration of candidacy for re-election and was retained in office in the general election of November, 1970, for an additional term of six (6) years beginning January 1, 1971, and ending December 31, 1976; and, that relator became seventy (70) years of age on November 3, 1970. Further, it is agreed that during all of the time relator has served as a judge, including the first year of his present term, there was no constitutional maximum age limitation applicable to the office he held. However, Section 30 now provides, in part, that: "All judges appointed under the provisions of sections 29(a)–(g) of this article or appointed under the nonpartisan selection of

judges in any circuit which adopts that method of selection, shall retire at the age of seventy years . . .."

From all of which, it becomes obvious that there is only one question to be answered—must relator, who was lawfully elected by the people to a six year term expiring December 31, 1976, in pursuance of the constitution and laws existing at the time of his selection, immediately "retire" and terminate his services as a judge because of the adoption of a new maximum age limitation for "all" judges?

■■■ In seeking the answer, we first consider relator's contention that Section 30 is to be given a prospective application and was not adopted with the design, purpose or intent to oust relator or others, who have or may reach the age of seventy during their present terms of office, prior to the end of the term to which they previously have been lawfully elected. First, it is of interest to consider what status, if any, a judge or the incumbent of any public office does have. Quite consistently, the courts of this country have declared that public offices are created solely to meet the needs of the public and that the incumbent thereof has no contractual or vested right to the particular office; and, on that premise, it has been concluded that: "The power to create an office generally includes the power to modify or abolish it." 42 Am.Jur., Public Officers, Section 33; 16 C.J.S. Constitutional Law § 251. In fact, this court has so held from the early case of State v. McBride, 4 Mo. 303, 29 Am.Dec. 636 (1836) to the recent case of State v. Davis, 418 S.W.2d 163 (1967). In McBride approval was given to the abolishment of an office, while in Davis shortening the term of an office was approved. Other decisions of this court during the interim on related questions may be found in Primm v. Carondelet, 23 Mo. 22; State ex rel. Attorney-General v. Davis, 44 Mo. 129; State ex inf. Crow v. Evans, 166 Mo. 347, 66 S.W. 355; State ex rel. Henson v. Sheppard, 192 Mo. 497, 91 S.W. 477; State ex rel. Rothrum v. Darby, 137

S.W.2d 532; Motley v. Callaway County, Mo., 347 Mo. 1018, 149 S.W.2d 875; Willens v. Personnel Bd. of Kansas City, 277 S.W.2d 665; and State v. Ludwig, 322 S.W.2d 841. As even a casual reading of such cases will reflect, the basic principle upon which the holdings therein were based was that public offices are created to meet the needs of the people; and, that when such need ceases to exist, there is no obligation or necessity to continue a useless office. From this premise, the courts have been able to rationalize the validity of making other structural changes in an office, such as shortening the term provided for the occupant of such an office. However, it is of interest as to whether or not the same rationale is truly applicable to the facts of this case. There has been no expression by the people that they no longer need a judge of Division Ten of the Sixteenth Judicial Circuit nor that there is a need to shorten the term of the occupant thereof. The question arises—even though the incumbent of an office has no vested right that the office continue, does he not have a right, by virtue of his selection by the people, to be the occupant of that office for the term for which he was selected if the need for such office still exists? Argument could be made that a change of qualification is directed more toward the incumbent than toward a structural change in the office. This court, after reviewing the historical and rather tenuous position of an office-holder in State ex rel. Henson v. Sheppard, supra, said, 91 S.W. at 1. c. 481: "* * * Speaking to the point in hand, Judge Andrews, in Nichols v. MacLean, 101 N.Y. [526] loc. cit. 533, 5 N.E. 347, 54 Am.Rep. 730, aptly says: 'But within these acknowledged limits the right to an office carries with it the right to the emoluments of the office. An office has a pecuniary value, although primarily it is an agency for public purposes.' So that, given that one but 'reads his title clear to' a public office, he may not be rudely cast out from its *solatium, its emoluments, except on due* process and by the rigor of penalties denounced by positive law." To those who

would answer the question posed in the negative based on the general concept that the "will" of the people is supreme, it might be suggested that the same people also expressed their "will" when they selected relator for the office in question. Nevertheless, we depart from this rather extraneous and somewhat illusive area and return to the point at hand—did the people intend by the new maximum age limitation to oust that person (relator) whom they had selected to serve as Judge of Division Ten until December 31, 1976? In other words—was it intended that Section 30 be given a retrospective or prospective application?

■ The accepted answer to the latter question may be found in 16 Am.Jur.2d, Constitutional Law, Section 48, wherein it is said, in part: "The presumption that statutory enactments are not to be considered retrospective in their operation unless the intention to make them so is clearly apparent from their terms has application as well to constitutional provisions. Thus, the general rule is that prospective effect alone is given to provisions of state constitutions. The ultimate determinative factor is, however, the *intent of the framers.*" Consistent therewith is the law of Missouri. "The settled rule of construction in this state, applicable alike to the Constitutional and statutory provisions, is that, unless a different intent is evident *beyond reasonable question,* they are to be construed as having a prospective operation only [citing cases]." (Emphasis added.) State ex rel. Scott v. Dircks, Mo., 111 S.W. 1; Mo.Dig., Constitutional Law, ■ The only prior constitutional provision providing for mandatory retirement was a provision in Section 25 (now repealed) which established a seventy-five year age limit for Appellate Judges. Section 30 is an entirely new provision applicable to all court plan judges, including circuit court judges, and as such, must be considered as an expression of a new constitutional policy. Therefore, if we are to follow the law of this state, prospective application is to be given the new

amendment in question, unless we can find a contrary intent that is spelled out in clear, explicit and unequivocal detail so that retrospective application is called for "beyond [a] reasonable question."

Respondent seeks to sustain his position, generally, with the argument that new Article Five does not have a saving provision or what is referred to as a "grandfather clause" (applicable to the office relator holds) retaining those presently in office. From this premise, it is submitted that the absence thereof is indicative of an intent to apply the new age limitation to those incumbents selected prior to January 1, 1972. We cannot accept the logic of such an argument. Obviously, if there is a saving provision, the rule of prospective application is not brought into the picture for the reason the provision itself answers the problem. Conversely, the rule is relevant only if there is no saving provision.

Relator submits that not only does the rule of construction noted sustain his position, but that in addition thereto there are other provisions in said article which positively reflect that the framers thereof (as well as the people) presumed application of the rule to the new maximum age limitation. For instance, Article Five, as now amended, also contains the following provisions: (1) Section 29(c) (1) (in so far as it contemplates possible adoption of the non-partisan court plan in other circuits) provides, in part: "Any judge holding office, or elected thereto, at the time of the election by which the provisions of section 29(a)–(g) become applicable to his office, shall, unless removed for cause, remain in office for the *term* to which he would have been entitled had the provisions of sections 29(a)–(g) not become applicable to his office."; (2) Section 31, paragraph 3, provides, in part: "The adoption of this amendment shall not affect the *term* or *tenure* of any right or duty of any judge of a court of appeals who is in office on the effective date of this amendment."; and, (3) Section 31, paragraph 7, provides, in part: "The commissioners * * *

holding office on the effective date of this amendment shall continue to hold office as commissioners of the court or court of appeals districts in which they serve until the end of their *terms* . . . .." (Emphasis added.) In response thereto, respondent suggests that such specific declarations have no relevant significance to the question at hand, for the reason that such "grandfather" clauses were required by virtue of the structural changes being made, i. e., three courts of appeal were being merged into one, commissioners were to be phased out and other circuits might adopt the non-partisan plan. Undoubtedly, the framers conceived of the possibility such structural changes might be construed as immediately affecting the terms of the occupants of the offices so changed, and as a precaution to protect such incumbents made the specific declarations noted. Regardless of the reason, such provisions in fact were adopted. Where no such structural changes were being made, it is·logical to conclude that the framers felt no necessity for spelling out a specific saving clause for the incumbents of offices not directly affected. To rule otherwise would be to destroy or at least ignore those words of Section 30 which declare that the provisions thereof apply to "[a]ll judges," and are obviously indicative of an intent that "all" of those serving within the non-partisan court plan were to be treated alike. Thus, all of the provisions herein quoted and considered fall into a harmonious whole, which, among others, is one of the hoped for objectives of judicial construction. Thus, the practical result is that one having been selected for a designated term prior to January 1, 1972, may serve out his full term regardless of the age attained during such term (except to the extent his term might have been limited by age at the time of his election) ; and, that one selected for a designated term after January 1, 1972, must retire upon reaching the age of seventy (70) years. As so applied, the words "[a]ll judges" used in Section 30 will be applicable alike to all serving under the non-partisan court plan, and will make

effective what clearly was the intent of the people—which, in addition, suggests not only a conclusion that setting such a maximum age qualification in the long run was desirable, but also an appreciation that there is, generally, no discernible difference in the capacity of one to perform his duties on the day after attaining age seventy and the day before. As a precaution against the possibility such an assumption proves unfounded as to any one of the very limited number of persons who could be affected by such amendment, the people adopted Section 27 of said article providing removal from office for disability.

■ It has been suggested that even though the rule of prospective application is called for by the law of this state, such rule attaches to the salary of the incumbent relator. In other words, that it would be a prospective implementation to terminate relator's salary on January 1, 1972, so long as no effort was made to recover the compensation paid him between November 3, 1970, (the date he became seventy years of age) and January 1, 1972. Such an argument is not valid for several reasons. The right to receive a salary or compensation is merely an incident of the office and naturally flows to that person who might be the occupant thereof. The right to ". . . compensation is not the creature of contract. It exists, if it exists at all, as the creation of law, and, when it so exists, it belongs to him * * * because the law attaches it to the office." Mechem, Public Officers, Section 855, page 577. The point at issue is whether or not relator is qualified to continue to serve as a judge, and not whether or not he is to be compensated for doing so. A contrary approach would create the possibility a person in office could continue to serve without compensation. In addition, such a construction would prevent a uniform application of the provisions of the new article to "[a]ll judges" alike and result in a very illogical implementation thereof and make impossible the harmonious blending of all sections of the article heretofore considered.

Lastly, comment should be made that we have refrained from extending this opinion by detailed consideration of the many cases from foreign jurisdictions, cited by the parties and found by our own research, primarily, because of the fact this court has considered those issues relating to the question now submitted more often than most courts as shown by the cases heretofore cited. In addition, we have found none of the foreign cases to be factually similar, and where they are somewhat so, the conclusion reached therein has been based on the precise wording of the amendment being considered in a frame of reference to other constitutional provisions not identical to those of this state. For those interested in their limited precedential value, however, such cases are considered under the titles "Public Officers," "Constitutional Law" and "Judges" in all recognized digests and texts.

In conclusion, we are convinced that the plan to be carried out, which is consistent with the rule of prospective application, allows every judicial officer, elected prior to January 1, 1972, to retain his office for the full term for which he had been selected unless removed for some reason other than age. We find nothing to indicate an intent to disrupt such tenure by adoption of new Article Five.

We need not consider, in view of our ruling on point one, relator's contention in point two that the amendment itself, in so far as it classifies circuit judges of this state, is in violation of the Fourteenth Amendment of the United States Constitution.

A peremptory writ of mandamus calling for the payment of the compensation due relator for his services as the Judge of Division Ten of the Sixteenth Judicial Circuit is to issue.

SMITH, WEIER and CLEMENS, Special Judges, concur.

DONNELLY, Acting C. J., dissents.

HENLEY, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents in separate dissenting opinion filed and concurs in separate dissenting opinion of HENLEY, J.

FINCH, C. J., and HOLMAN and BARDGETT, JJ., not participating.

HENLEY, Judge (dissenting).

I respectfully dissent.

I agree with relator's contention that the general rule is that the provisions of a constitutional amendment are not to be applied retrospectively but are to be given prospective effect only.[1] But I cannot agree that this rule prevents application to him of § 30 of Article V (adopted August, 1970), Constitution of Missouri, from and after January 1, 1972, its effective date.

Relator contends that to apply the mandatory age 70 retirement provision to him is to give the amendment retroactive effect, contrary to the rule. In support of this contention he argues that in the election on November 3, 1970[2] he was retained in office for a full six-year term under a constitution the provisions of which did not require him to retire at any age; that to require him to retire on the effective date of the amendment because he had reached age 70, would be to deprive him of a full term guaranteed by the constitution under which he was elected and under which he thereafter accepted the new term; that to permit respondent to

apply § 30 to him would be to apply a law not effective until January 1, 1972, retroactively (1) to a term of office which began before that date and (2) to a public officer who was not, when elected or when he accepted the new term, burdened with the requirement that he retire at age 70.

His contention will not bear close examination in the light of his own argument. Exposed to this light, the unadorned truth underlying his contention is revealed to be: that he has a vested interest or right in the office and its term as it existed under the constitution when he was elected and sworn in.

This contention flies squarely into the face of a recent decision of this court that a public officer has " * * * no vested or private property right in a public office * * *," or its term.[3] In the *Davis* case the court held that a constitutional provision that, except as provided in the constitution and subject to right of resignation, all officers shall hold office for the term thereof and until their successors are duly elected or appointed and qualified did not preclude shortening of terms of Kansas City officials from four to two years via charter amendment; that constitutional authority and power to amend the charter carried with it the right of the people to determine the length of term of their elected officials even though that incidentally would involve shortening the terms of incumbents. In *Davis*, supra, the court quoted with approval this statement from Sanders v. Kansas City, Mo.App., 175 Mo.App. 367, 162 S.W. 663, l.c. 665: " * * * [A]n officer elected or appointed even for

1. See: State ex rel. Scott v. Dircks, Mo., 111 S.W. 1, 3, and cases therein cited. See also: 16 Am.Jur.2d, Constitutional Law, p. 218, § 48, and cases there cited.

2. This date was, incidentally, his seventieth birthday.

3. State ex rel. Voss, et al. v. Davis, et al., 418 S.W.2d 163, l. c. 167 and l. c. 170–172. See also: 42 Am.Jur., Public Officers, p. 905, § 33. Closely allied to the proposition that an incumbent has

no vested right in a public office or its term is the general rule that "[t]here can, in the nature of things, be no vested right in an existing law which precludes its change or repeal * * *." See: 16 Am.Jur.2d, p. 763, § 423, and cases there cited. The people who created the office and retained him in it have the power, free of any right of relator, to change their basic law at any time, including the power to change it so as to disqualify their officers who reach a given age.

a definite term takes office with the implied understanding that the power which created the office may abolish it before the expiration of his term, in which event he will find himself out of office * * *."

It logically follows that the power of the people to abolish an office necessarily includes the power to do less, to fix an arbitrary age at which those elected or appointed thereto must retire, even though this would have the effect of compelling the retirement of an incumbent and thereby cut short his term. The customary method by which incumbent officers are exempted from the application of the above rules is the inclusion of a saving or "grandfather" clause in the amendment or its schedule.[4] Neither this amendment nor its schedule contains a grandfather clause applicable to circuit judges appointed under the nonpartisan court plan.

For the above reasons, I would hold that relator has no vested right in the office of circuit judge as it existed prior to the effective date of § 30; that § 30 is applicable to him, required his retirement, and that he is disqualified to serve as circuit judge as of January 1, 1972. Accordingly, I would quash our alternative writ of mandamus.

The above reasons are sufficient to support the decision I believe the court should reach. However, there is another and very simple reason why the writ should be quashed which may be stated in very few words. Section 30 provides: *"All* judges *appointed* under the * * * [nonpartisan court plan] * * * *shall* retire at the age of seventy years * * *." (Emphasis supplied.) Relator was *appointed* under the nonpartisan court plan and he is over *age seventy*. The quoted words mean what they say, they exclude or exempt no one, and, since there is no clause elsewhere in the amendment saving circuit judges under the nonpartisan court plan from application of this section, they mandate his retirement.

I refrain from discussing the Fourteenth Amendment question because it is not considered in the majority opinion.

SEILER, Judge (dissenting).

In addition to concurring in Judge HENLEY's dissent, I wish to point out that as I understand the reasoning of the majority opinion, it goes like this: since section 30 says that all non-partisan court judges are to retire at age 70, the intent of the voters was to treat all non-partisan court judges alike. But since circuit court judges who come under the plan later are to hold office for the term to which they would have been entitled had the plan not been adopted in their circuit (this is Sec. 29(c) (1) and is a true grandfather clause) and since the change of nomenclature to judge of the court of appeals is not to work a wholesale removal from office of those who used to be known as judges of the St. Louis, Kansas City, or Springfield Court of Appeals (this is found in paragraph 3 of Sec. 31, the schedule, and in my opinion, is not a grandfather clause at all, but operates only to make it plain that those who were judges of the St. Louis, Kansas City and Springfield Courts of Appeal are to become the judges of the court of appeals in their respective districts), it follows there must also be a grandfather clause for every level of non-partisan court judge—circuit court, probate, appellate and supreme court—because, to quote the opinion, "To rule otherwise would be to destroy or at least ignore those words of Section 30 which declare that the provisions thereof apply to '[a]ll judges,' and are obviously indicative of an interest that 'all' of those serving within the non-partisan court plan were to be treated alike." Therefore, even though there is no grandfather clause applying to judges in relator's class, relator can nevertheless continue to serve.

This is like saying that if there is a general rule applying to all classes making up an aggregate, but it has one exception,

---

4. See, for example, § 3 of the Schedule to the 1945 Constitution of Missouri.

then to achieve uniformity, there must be as many exceptions as there are classes, or to put it another way, if there is an exception as to one, there must be an exception for all. I do not believe the people had any such intention.