Richard JACKSON, Plaintiff–Appellee,

v.

The STATE of Colorado; The Board of County Commissioners of Morgan County; Colorado Peace Officer Standards and Training Board; The Director of the Colorado Peace Officer Standards and Training Board; Gale A. Norton, in her official capacity as Chairperson of the Colorado Peace Officer Standards and Training Board; Steve Zotos, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Pat Ahlstrom, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Margaret W. Carpenter, in her official capacity as member of the Colorado Peace Officer Standards and Training Board; Jeffrey J. Corriveau, in his official capacity as member of the Colorado Peace Officer Standards and Train-

ing Board; Daniel L. Corsentino, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; George E. Epp, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Rev. Gill Ford, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Joe Johnson, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Ed Jordan, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Charles J. Johnston, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Al Kiburas, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Frank R. Martinez, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; David Michaud, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Richard L. Murdie, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; Allan F. Stanley, in his official capacity as member of the Colorado Peace Officer Standards and Training Board; and Charles Widup, in his official capacity as member of the Colorado Peace Officer Standards and Training Board, Defendants–Appellants.

No. 97SA275.

Supreme Court of Colorado,
En Banc.

Sept. 21, 1998.

Rehearing Denied Nov. 16, 1998.

Powers Phillips, P.C., Richard W. Daily, Denver, for Plaintiff–Appellee.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, John August Lizza, First Assistant Attorney General, Department of Law Section, Denver, for State Defendants–Appellants.

George Monsson, Morgan County Attorney, Ft. Morgan, for Defendant–Appellant The Board of County Commissioners of Morgan County.

Justice BENDER delivered the Opinion of the Court.

We address several constitutional challenges to the facial validity and application of the Sheriff Training Statute. *See* §§ 30–10–501.5 to –501.7, 9 C.R.S. (1997). The Sheriff Training Statute promulgates training and certification requirements for county sheriffs and mandates the suspension of their salaries in the event that they fail to comply with those requirements. In January of 1997, Sheriff Richard Jackson filed an action under the Federal Civil Rights Act, 42 U.S.C. § 1983 (1979), challenging Morgan County's application of the Sheriff Training Statute to withhold his salary. The trial court issued a permanent injunction, ruling that the Sheriff Training Statute was unconstitutional and unenforceable against Sheriff Jackson and that its application to him violated his substantive due process rights under the Fourteenth Amendment. While this suit was pending, the General Assembly repealed and reenacted a similar version of the Sheriff Training Statute. The trial court held that

the reenacted Sheriff Training Statute was also unforceable. The court issued an order prohibiting the State from suspending Sheriff Jackson's salary and awarded attorney fees and costs under 42 U.S.C. § 1988 (1980).

In accordance with section 13–4–102(1)(b), 5 C.R.S. (1997),[1] the Board of County Commissioners of Morgan County (the "BOCC"), the Peace Officer Standards and Training Board (the "POST Board"), its Director and individual members of the POST Board in their official capacities, and the State of Colorado (collectively "the State" or "State-defendants") bring this direct appeal of the trial court's rulings and judgment. We affirm both the permanent injunction issued by the trial court and its related orders. We hold that when the General Assembly enacted the original Sheriff Training Statute in 1990, it lacked the authority to impose any qualifications on the constitutionally created office of county sheriff. Hence, we hold that because the original Sheriff Training Statute sought to impose qualifications for the job of sheriff in the form of certification requirements, it was unconstitutional. We further hold that the training and certification requirements contained in the reenacted Sheriff Training Statute cannot be applied to Sheriff Jackson during his current term of office. Lastly, we affirm the trial court's rulings with respect to the violation of Sheriff Jackson's substantive due process rights under the Fourteenth Amendment. Accordingly, we return this case to the district court for calculation of attorney fees and costs under 42 U.S.C. § 1988.

## I. BACKGROUND

As background to this constitutional dispute, we detail the relevant facts developed in the trial court. In 1990, the General Assembly passed the Sheriff Training Statute, § 30–10–501.5, 12A C.R.S. (1996 Supp.)(the "predecessor training statute")[2], requiring

---

**1.** Section 13–4–102(1), 5 C.R.S. (1997) provides in part,

[T]he court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts, . . . except in:
(b) Cases in which a statute . . . has been declared unconstitutional.

Therefore, because the court of appeals is without jurisdiction to review this final judgment

where the trial court decided the applicable statute is unconstitutional, we exercise jurisdiction and review the trial court's judgment.

**2.** The predecessor training statute was originally enacted in 1990 and amended in 1995 to correct statutory cross-references

that all county sheriffs complete certain training requirements and obtain basic peace officer certification. In November of 1994, Morgan County voters elected Richard Jackson to the position of county sheriff. When his term of office began in January of 1995, Sheriff Jackson did not have the proper certification as a peace officer and therefore was not in compliance with the Sheriff Training Statute. A member of the Morgan County Board of Commissioners advised Sheriff Jackson that he must obtain peace officer certification or his pay would be suspended pursuant to the training statute.

After this notification, Sheriff Jackson completed the training program approved by the POST Board for peace officer certification and was scheduled to take a written exam necessary for certification. Before the date of the exam, Sheriff Jackson was diagnosed with lung cancer, which required immediate surgery and subsequent chemotherapy and radiation treatments. This illness prevented Sheriff Jackson from sitting for the exam for several months. In January of 1997, Sheriff Jackson took the exam despite undergoing radiation treatment the day of the test. He did not pass the exam and to date he has not attempted to retake the certification examination.

After Sheriff Jackson failed the exam, the POST Board Director informed the Morgan County Commissioners of this fact and the commissioners voted unanimously to suspend Sheriff Jackson's salary and benefits, including his health insurance, effective for his January 31, 1997 paycheck.[3] Immediately upon learning of the commissioners' vote,

Sheriff Jackson obtained a temporary restraining order from the Denver District Court prohibiting the suspension of his salary and benefits. At the State's request, the Denver court transferred the case to the Morgan County District Court, which entered a preliminary injunction.

In May of 1997, the legislature repealed and reenacted the Sheriff Training Statute (the "reenacted training statute").[4] Following the reenactment of this statute, the State sought to dissolve the preliminary injunction and enforce the statute's provisions against Sheriff Jackson.

As part of its final orders, in July of 1997, the trial court declared that the predecessor training statute was unconstitutional, and that the reenacted training statute was not applicable to Sheriff Jackson. The court ruled that the State's attempts to carry out the predecessor training statute's provisions violated Sheriff Jackson's due process rights under the Fourteenth Amendment. The court entered judgment on behalf of Sheriff Jackson and awarded attorney fees and costs under 42 U.S.C. § 1988. The State-defendants appeal from that judgment.

## II. CONSTITUTIONALITY OF THE PREDECESSOR TRAINING STATUTE

■ Initially, we address the constitutionality of the predecessor training statute as it existed before the passage of Referendum C.[5] This version of the Sheriff Training Statute required a person elected to the office of Sheriff for the first time to complete certain training requirements and to obtain

---

3. The predecessor training statute provided that in the event that a sheriff fails to comply with the training requirements,

the Colorado peace officers standards and training board shall notify the board of county commissioners of the sheriff's failure to comply with the requirements ... and that state law requires the county commissioners to immediately suspend such sheriff's pay until the requirements ... have been complied with. § 30–10–501.7(2).

4. In 1996, based on our ruling in *Reale v. Board of Real Estate Appraisers*, 880 P.2d 1205 (Colo. 1994) (see discussion *infra*, § II) the people passed Referendum C. Referendum C granted to

the legislature specific authority to establish training and certification requirements for county sheriffs. Acting on this grant of authority, the General Assembly reenacted the Sheriff Training Statute.

5. The subsequent repeal of this version of the statute does not moot the question of its constitutionality. The district court's award of attorney fees under 42 U.S.C. § 1988 is predicated on its finding that Sheriff Jackson's due process rights were violated by the State's implementation of the predecessor training statute. *See Catron v. Catron*, 40 Colo.App. 476, 478, 577 P.2d 322, 323–24 (1978) (recognizing that contempt issue is not moot where a finding of contempt is a prerequisite to awarding attorneys' fees).

basic peace officer certification from the POST Board within one year. *See* § 30–10–501.6(1)(b). The district court held that the predecessor training statute was unconstitutional based upon the reasoning of our decision in *Reale v. Board of Real Estate Appraisers,* 880 P.2d 1205 (Colo.1994), which invalidated a similar statute requiring a county assessor to obtain a real estate appraiser's license within one year of taking office.

We agree with the trial court's application of our logic in *Reale* to invalidate the predecessor training statute. There is no difference between requiring a county assessor to obtain a real estate appraiser's license within one year of taking office and requiring a county sheriff to obtain peace officer certification within one year of taking office.

In *Reale,* we recognized that the Colorado Constitution provides for the office of county assessor and establishes specific requirements for holding this office. *See Reale,* 880 P.2d at 1206 (citing Colo. Const. art. XIV, § 10). We held that these constitutional qualifications were exclusive and that "[t]he Colorado Constitution reserves no authority in the state legislature to change, add to, or diminish the qualifications for constitutionally created offices." *Id.* at 1211. To hold otherwise would allow the General Assembly to amend the roles and responsibilities of elected officials while in office and thereby undermine the people's fundamental right to vote for the representatives of their choice. *See id.* at 1207–08.

Similar to the office of county assessor discussed in *Reale,* the office of county sheriff was created by the Colorado Constitution, which establishes the qualifications for holding this office. *See* Colo. Const. art. XIV, §§ 8, 10. When Sheriff Jackson was elected in 1994, the constitution only required that a county sheriff be a qualified elector and a resident of the county for the one-year period preceding his election. *See id.* § 10. The record reveals that Sheriff Jackson met these constitutional requirements at the time of his election. Under *Reale,* these constitutional qualifications were exclusive, and the General Assembly had no authority to impose additional qualifications as a prerequisite to hold-

ing the office of county sheriff. *See Reale,* 880 P.2d at 1211.

Attempting to avoid the application of the rationale of *Reale,* the State argues that *Reale* is distinguishable because the Sheriff Training Statute merely requires the suspension of pay for a failure to comply with its mandates, while non-compliance with the statute in *Reale* prevented the county assessor from performing his or her duties. In other words, the State argues that Sheriff Jackson's circumstances differ from those in *Reale* because Sheriff Jackson can still perform the responsibilities of his elected office, albeit without the benefit of a salary and fringe benefits, while Reale could not. We are not persuaded by the State's argument because the suspension of the Sheriff's salary represents a job restructuring that effectively prevents the Sheriff from continuing to perform his elected duties.

Although we acknowledge that the two statutes provide different consequences for a failure to comply with requirements after being publicly elected to office, both suffer from the same constitutional infirmity: they represent additional qualifications superimposed upon the qualifications mandated by the Colorado Constitution. Since the constitution provides no authority for the General Assembly to impose additional qualifications, we hold that the predecessor training statute is facially unconstitutional and unenforceable against Sheriff Jackson.

## III. EFFECT OF REFERENDUM C

■ After we announced our decision in *Reale,* the people of the state voted to amend the Colorado Constitution to vest the General Assembly with authority to establish qualifications for the office of county sheriff. *See* Colo. Const. art. XIV, § 8.5 (1996) ("Referendum C"). The State argues that we should construe Referendum C to apply retroactively in order to cure the constitutional infirmities in the predecessor training statute. We decline to give Referendum C retroactive effect because its language does not indicate an intent to apply its provisions retroactively.

■ As a general rule, retroactive application of the law is highly disfavored. *See In*

*re Great Outdoors Colo. Trust Fund,* 913 P.2d 533, 539 (Colo.1996). Unless the language of a constitutional amendment manifests an intent to make its provisions retroactive in operation, we must presume that the amendment only has prospective application. *See Bolt v. Arapahoe County Sch. Dist. No. Six,* 898 P.2d 525, 533 (Colo.1995); *People v. Elliott,* 186 Colo. 65, 68, 525 P.2d 457, 458 (1974). We therefore examine the language of Referendum C to determine whether it manifests an intent to apply retroactively.

■ In its entirety, Referendum C reads: "The general assembly *shall* have the authority to establish by law qualifications for the office of county sheriff, including but not limited to, training and certification requirements." Colo. Const. art. XIV, § 8.5 (emphasis added). This language does not expressly refer to the predecessor training statute, nor does it indicate an intent that the reenacted training statute should apply retroactively. The term "shall" appears within the phrase vesting the General Assembly with authority to establish qualifications for county sheriffs. Absent words evincing a contrary intent, use of the word 'shall' generally refers to future events. *See Jones v. Stockgrowers' Nat'l Bank of Pueblo,* 17 Colo. App. 79, 84, 67 P. 177, 179 (1901) ("The word 'shall,' in its common and ordinary usage, unless accompanied by qualifying words which show a contrary intent, always refers to the future."). By its own words, Referendum C vests the General Assembly with the authority to act prospectively. Thus, we hold that Referendum C does not retroactively remedy the constitutional infirmity of the predecessor training statute.

### IV. APPLICATION OF THE REENACTED TRAINING STATUTE

■ Employing Referendum C's grant of authority, the General Assembly repealed and reenacted the predecessor training statute, with minor modifications not relevant to this case, effective May 21, 1997. *See* §§ 30–10–501.5 to –501.7, 9 C.R.S (1998). The State argues that even if the reenacted training statute only applies prospectively, the statute's training and certification require-

ments apply to Sheriff Jackson because he held office on the date the statute took effect. Application of our analysis in *Reale* persuades us to reject this argument.

■ We hold that the new legislative qualification, that sheriffs must possess basic peace officer certification, may not be imposed on Sheriff Jackson as of May 21, 1997, because the voters of Morgan County elected Sheriff Jackson to serve for a term of four years under the constitutional qualifications then in effect. *See* Colo. Const. art. XIV, § 8. New requirements for holding a constitutionally created office may not be enforced against an incumbent during a term of office that began before the effective date of the new requirements. Hence, the training and certification requirements of the reenacted training statute cannot be imposed upon Sheriff Jackson during his current term of office. After his election, Sheriff Jackson holds the office of sheriff for the duration of his four-year term under the constitutional qualifications in effect at the time of his election. *See generally State ex rel. Hall v. Vaughn,* 483 S.W.2d 396, 400 (Mo.1972) (holding that newly enacted mandatory retirement provisions do not apply to elected circuit court judge during his current term of office).

Because of our determination that the reenacted training statute does not apply to Sheriff Jackson, we do not address the issue of the validity of the new statute's salary suspension provision.

### V. 42 U.S.C. § 1983 CLAIM

The trial court found that Sheriff Jackson had a valid claim under the Federal Civil Rights Act, 42 U.S.C. § 1983, because the State violated Sheriff Jackson's Fourteenth Amendment rights to substantive due process when it enforced the unconstitutional predecessor training statute against him by suspending his salary. The State challenges this ruling on three bases: (1) that the POST Board, its director, and its members are not proper parties to this action; (2) that Morgan County cannot be liable to Sheriff Jackson under 42 U.S.C. § 1983; and (3) that Sheriff Jackson was not entitled to a hearing on the

issue of his salary suspension. We reject each argument in turn and affirm the trial court's rulings.

## A.

■ We first address the State's contention that the POST Board, its director, and its members are not proper parties to this action. Our review of the Sheriff Training Statute and the statutory scheme creating the POST Board leads us to conclude that the POST Board, its Director, and its individual members are sufficiently involved in the implementation and enforcement of the Sheriff Training Statute to be proper defendants in this action.[6]

■ State officers may be sued in their official capacities under 42 U.S.C. § 1983 if their duties include "implementation or enforcement" of the challenged statute, and if the plaintiff seeks only declaratory or injunctive relief and makes no claim for damages. *See Lucchesi v. State,* 807 P.2d 1185, 1194 (Colo.App.1990). We must therefore determine whether the POST Board's director and individual members are state officers whose duties include the implementation or enforcement of a challenged statute.

The members of the POST Board are determined by statute: the state attorney general holds the position of POST Board chairperson; other members include the special agent in charge of the Denver division of the FBI, the executive director of the department of public safety, one local government representative, six active chiefs of police from municipalities of the state, six active sheriffs from counties of this state, and one lay member, all of whom are appointed by the governor. *See* § 24–31–302(3), 7 C.R.S. (1997). The POST Board is a state board created within the Department of Law. *See id.* § (1). Thus, the POST Board's director and individual members are state officers.

We next examine the Sheriff Training Statute as well as the statutory scheme that creates and defines the POST Board and its duties to determine whether the duties of the POST Board include implementation or enforcement of the Sheriff Training Statute. The POST Board's enabling legislation sets forth the basic peace officer certification and POST Board-approved training requirements for county sheriffs. *See* §§ 24–31–301 to –307, 7 C.R.S. (1997). By mandating basic peace officer certification and POST Board-approved training for county sheriffs, the Sheriff Training Statute necessarily incorporates into the POST Board's duties the oversight of the statutory requirements for the certification process and training programs.

The POST Board's duties with respect to overseeing the requirements of the Sheriff Training Statute are not limited to notifying the county commissioners of a sheriff's failure to obtain peace officer certification. They also include statutory responsibility for the overall administration of the peace officer certification process and training programs. *See* §§ 24–31–301 to –307. The POST Board is responsible for: (1) the evaluation and approval of peace officer training programs and academies, *see* § 24–31–303(1)(a); (2) the certification of applicants and promulgation of rules and regulations related to peace officer certification, *see* § 24–31–305(a); (3) administration of the written certification examinations, *see* § 24–31–305(b); and (4) enforcement of the peace officer certification requirements. *See* § 24–31–307. In addition, the POST Board has discretionary authority, under its enabling legislation and the Sheriff Training Statute, to substitute education and experience for the statutory training requirements, grant extensions of time for compliance with the peace officer certification requirement, waive the annual in-service training requirements, or grant variances from the statutory peace officer certification requirements. *See* § 30–10–501.6.

Given the scope of their powers and duties, we are convinced that the POST Board, its Director, and the individual members are sufficiently involved in the implementation

---

**6.** For the purposes of this section, the term "Sheriff Training Statute" refers to both the predecessor and the reenacted training statutes.

and enforcement of the Sheriff Training Statute to be proper parties to this action.[7]

### B.

■ The State's second argument is that Morgan County cannot be liable to Sheriff Jackson under 42 U.S.C. § 1983 since the suspension of Sheriff Jackson's salary was not the result of a local policy or custom attributable to Morgan County. We do not agree that the local policy or custom requirement is applicable to this claim because Sheriff Jackson seeks only prospective equitable relief and not damages from Morgan County.

■ A local governmental entity's liability for damages under 42 U.S.C. § 1983 is limited to situations involving the implementation or enforcement of a local ordinance, policy, or custom. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *County of Adams v. Hibbard,* 918 P.2d 212, 216 (Colo.1996). It is undisputed that this case does not involve such a local ordinance, policy, or custom. Rather, Sheriff Jackson's claims relate to the implementation and enforcement of the Sheriff Training Statute, a state statute.

The local policy requirement set forth in *Monell* does not apply when the plaintiff's claims are limited to prospective, injunctive, and declaratory relief. *See Chaloux v. Killeen,* 886 F.2d 247, 251 (9th Cir.1989) (noting that "[t]he *Monell* court's justification for limiting an action for damages is notably absent when the relief sought is an injunction halting the enforcement of an unconstitutional state statutory scheme"); *see also Nobby Lobby, Inc. v. City of Dallas,* 767 F.Supp. 801, 810 (N.D.Tex.1991) (recognizing that the *Monell* "official policy or custom" requirement is not applicable where only prospective relief is at issue).

Since the *Monell* local policy requirement does not apply in 42 U.S.C. § 1983 suits where only prospective, injunctive relief is sought, as it is here, we hold that Sheriff

Jackson's 42 U.S.C. § 1983 claim against Morgan County is proper.

### C.

■ Lastly, the State contends that the trial court's finding of a due process violation was in error because Sheriff Jackson was not entitled to a hearing. However, the trial court held that the BOCC'S application of the unconstitutional training statute to Sheriff Jackson violated his right to *substantive* due process. The issue of a hearing is irrelevant to a substantive due process claim. Thus, we affirm the trial court's ruling. We hold that Sheriff Jackson possesses a vested property right to his salary and, therefore, the suspension of his salary under these circumstances violated his substantive due process rights under the Fourteenth Amendment.

This case is unusual because the position of county sheriff is constitutionally created. *See* Colo. Const. art. XIV,§ 8. The Colorado Constitution also provides that the Sheriff shall receive a fixed salary during his term of office:

> The general assembly shall fix the compensation of county officers in this state by law.... [C]ounty officers shall not ... have their compensation increased or decreased during the terms of office to which they have been elected or appointed.

Colo. Const. art XIV, § 15.

Any attempt to alter Sheriff Jackson's salary during his term of office contravenes the mandate of the Colorado Constitution. Accordingly, we conclude that as a duly elected county officer, Sheriff Jackson possesses a constitutionally vested right to receive his salary in return for performing his duties during his term in office. Therefore, the BOCC'S actions in enforcing the unconstitutional predecessor training statute violated

---

7. We acknowledge that some of these defendants may be redundant. *See Oten v. Colorado Bd. of Soc. Servs.,* 738 P.2d 37, 41 (Colo.App.1987). The district court made no factual findings to determine which defendants are necessary to en-

force the State's liability for a fee awarded under 42 U.S.C. § 1988. This issue has not been raised by any of the parties, hence, we do not address this issue.

Sheriff Jackson's rights to substantive due process.

## VI. CONCLUSION

For the reasons stated in this opinion, we affirm the judgment of the district court and remand the case for calculation of attorney fees and costs to which Sheriff Jackson is entitled pursuant to 42 U.S.C. § 1988.